**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bernard C. BIRCH, Jr., aka Chubby,**
**Defendant–Appellant.**

**No. 93–3348.**

United States Court of Appeals,
Tenth Circuit.

Nov. 3, 1994.

---

2. *Oliver Twist*, Charles Dickens 520 (Dodd, Mead & Co. 1941) (1838).

Cyd Gilman, Asst. Federal Public Defender for the Dist. of Kansas, Wichita, KS, for defendant-appellant.

Kim M. Fowler (Randall K. Rathbun, U.S. Atty., with her on the brief), Asst. U.S. Atty., Dist. of Kansas, Kansas City, KS, for plaintiff-appellee.

Before TACHA, LOGAN, and EBEL, Circuit Judges.

TACHA, Circuit Judge.

Bernard C. Birch, Jr. was convicted by a jury of assault on a federal officer and possession of a firearm during a violent crime. He appeals both his convictions and his sentence. Defendant alleges in his appeal that the district court erred in (1) allowing the prosecution to conduct a demonstration during cross-examination of defendant, (2) admitting evidence of defendant's prior convictions under Federal Rule of Evidence 404(b), and (3) assessing two criminal history points for each of two prior juvenile convictions of defendant. This court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and affirms.

## I. Background

On April 28, 1993, Special Agent Randy O'Dell of the Bureau of Alcohol, Tobacco and Firearms, and Lieutenant Aaron Harrison of the Wichita Police Department were conducting surveillance of a residence occupied by defendant's girlfriend and their two children from Agent O'Dell's unmarked car. The officers observed defendant arrive at and enter the house. Defendant was driven to the house by a friend; several other friends accompanied him as well. After checking on the well-being of the occupants, defendant left the residence. Rather than leave with the friend who had brought him to the house, defendant drove away in his girlfriend's car, which had been parked in the driveway.

Meanwhile, the officers drove by the house, circled the block, and followed defendant's vehicle as he left the house. When defendant noticed he was being followed, he turned his car around and drove back towards the officers' car. As the cars passed one another, a shot was fired from defendant's car, wounding Agent O'Dell.

Defendant fled the scene in the vehicle from which the shot was fired. Agent O'Dell and Lieutenant Harrison gave chase, calling other units in as back-up. Two to three minutes later, defendant lost control of his vehicle and crashed the car into a tree. He fled on foot and was apprehended shortly thereafter.

After his arrest and at trial, defendant claimed that, although he was driving the car at the time of the shooting, there was a passenger in the car who fired the shot that wounded Agent O'Dell. According to defendant, this individual[1] leaped from the car during the car chase, leaving his weapon in the car with defendant.

Defendant testified in his own defense at trial. On cross-examination by the prosecution, and over defense counsel's objection, defendant was asked to demonstrate his version of the shooting. Two courtroom chairs were placed side by side, simulating the front seat of the car, and defendant was asked to show how the shooting occurred. During

---

1. Defendant identified this individual as "Mike Bradford." Apparently neither police investiga-tors nor defendant have been able to locate Mr. Bradford.

this demonstration, the prosecutor asked defendant to show the jury the position of the gun when it was fired. The prosecution then called witnesses who testified that defendant's version of the shooting was impossible. These witnesses testified that a bullet fired from a gun in the position demonstrated by defendant could not possibly have the trajectory of the bullet that wounded Agent O'Dell.

## II. Courtroom Demonstration

■ This court examined the use of demonstrative evidence that purports to reenact events at trial in *United States v. Wanoskia,* 800 F.2d 235 (10th Cir.1986). In *Wanoskia,* a defendant on trial for murdering his wife maintained that his wife had shot herself. *Id.* at 236–37. The prosecution attempted to discredit the defendant's story by showing that it would have been impossible for the victim to shoot herself. The medical examiner testified that, based on the powder burns on the victim, the fatal shot was fired from approximately eighteen inches from the victim. *Id.* at 237. The prosecution then presented a demonstration to show that the victim could not have shot herself from this distance. *Id.* at 236.

Recognizing the highly persuasive nature of evidence purporting to reenact actual events, we declared in *Wanoskia* that the trial court "must take special care to ensure that the demonstration fairly depicts the events at issue." *Id.* at 238 (citation omitted). To ensure that such care is taken by trial courts, we announced a threshold requirement for the admission of demonstrative evidence, which we adopted from the *Jackson v. Fletcher* standard for experimental evidence:

> "Where ... an experiment purports to simulate actual events and to show the jury what presumably occurred at the scene ..., the party introducing the evidence has a burden of demonstrating substantial similarity of conditions. They may not be identical but they ought to be sufficiently similar so as to provide a fair comparison."

*Wanoskia* at 238 (quoting *Jackson v. Fletcher,* 647 F.2d 1020, 1027 (10th Cir.1981)).

Despite this threshold requirement for admissibility, "a trial court's decision to admit or exclude such evidence will be reversed only if the court abused its discretion." *Wanoskia,* 800 F.2d at 238 (citation omitted). We therefore review the district court's decision to allow the demonstration with deference.

The purpose of the demonstration in the instant case was to illustrate and clarify testimony already given by defendant on direct examination. Defendant himself participated in the demonstration. Courtroom chairs were used to simulate seating in the car; defendant sat in one chair while an ATF agent sat in the other. Defendant demonstrated his version of the events. Nothing in the record indicates that the jury was led to believe that the chairs represented anything other than the car seats. Moreover, the defense could have conducted a redirect examination to correct any part of the demonstration that was potentially misleading to the jury. Although only a limited foundation was laid by the prosecution, the prosecution nonetheless met its burden of demonstrating substantial similarity between the courtroom demonstration and the seating in defendant's car.

Defendant's argument that the demonstration here is similar to that found improper in *Jackson v. Fletcher* fails. In *Jackson,* the evidence at issue was testimony describing the results of an out-of-court reenactment of a vehicle accident. We found this evidence unduly prejudicial because the experiment lacked a substantial similarity of circumstances. *Id.* at 1026–28. Here, in contrast, the evidence consisted of an in-court demonstration by defendant that was sufficiently similar to actual events to provide a fair comparison.

■ Defendant argues that the district court's failure to take the protective measures taken by the district court in *Wanoskia* resulted in unfair prejudice to defendant. In *Wanoskia,* we noted with approval that the trial court had first viewed the demonstration outside the presence of the jury and that the jury was instructed to disregard the demonstration if it determined that the testimony lacked an adequate foundation. *Wanoskia,*

800 F.2d at 239. In the instant case, however, the defense neither requested that the court view the demonstration outside the jury's presence nor requested that a limiting instruction be given to the jury. As a result, the defense cannot now allege that the trial court erred in failing to take these steps. *See Robinson v. Audi NSU Auto Union,* 739 F.2d 1481, 1485 (10th Cir.1984).

The courtroom demonstration, combined with the testimony regarding the bullet's trajectory, was indeed damaging to the defense. Evidence that is prejudicial to the defense is inadmissible, however, only if its probative value is substantially outweighed by its unfair prejudice to the defendant. *See* Fed. R.Evid. 403.[2] We conclude that the district court did not abuse its discretion in allowing the prosecution to conduct the demonstration using courtroom chairs to represent the front seat of defendant's car.

### III. Rule 404(b) Evidence

■ Defendant also alleges that the district court erred in allowing the prosecution to present evidence of defendant's two previous convictions for battery on a law enforcement officer. Defendant argues that this evidence was inadmissible under Federal Rule of Evidence 404(b). We review the district court's decision to admit evidence under Rule 404(b) for an abuse of discretion. *United States v. Record,* 873 F.2d 1363, 1373 (10th Cir.1989).

Rule 404(b) governs the admissibility of evidence of other criminal acts of the defendant:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The district court must make a threshold determination that the offered evidence is " 'probative of a material issue other than

character' " before admitting evidence under Rule 404(b). *United States v. Martinez,* 890 F.2d 1088, 1093 (10th Cir.1989) (quoting *Huddleston v. United States,* 485 U.S. 681, 686, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988)), *cert. denied,* 494 U.S. 1059, 110 S.Ct. 1532, 108 L.Ed.2d 771 (1990).

■ In order to aid the district court's determination of whether evidence is offered to prove an issue other than character, the government must precisely articulate the purpose of the proffered evidence. *United States v. Kendall,* 766 F.2d 1426, 1436 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986); *see also United States v. Porter,* 881 F.2d 878, 884 (10th Cir.), *cert. denied,* 493 U.S. 944, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). *Kendall* further requires the trial court to "specifically identify the purpose for which such evidence is offered," noting that "a broad statement merely invoking or restating Rule 404(b) will not suffice." *Kendall,* 766 F.2d at 1436.

In this case, the government failed to articulate with precision the evidentiary purpose of the Rule 404(b) evidence it offered. Although the government filed a pretrial Notice of Intent to Introduce Evidence Pursuant to Rule 404(b), the Notice stated only that the evidence's purpose was "to prove the defendant's knowledge, identity and absence of mistake or accident." The Notice does not articulate "the relevant purpose and specific inferences to be drawn from ... [the] evidence of other acts" offered by the government. *Kendall,* 766 F.2d at 1436. At trial, evidence of defendant's prior convictions, as well as evidence of the acts that resulted in the convictions, was admitted without a more specific articulation of its purpose. Moreover, the trial court did not identify the specific permissible purpose for which the evidence was admitted.

■ Our analysis does not end here, however. Even when the requirements of *Kendall* are not adhered to, the 404(b) evidence

---

**2.** *Cf. United States v. Gaskell,* 985 F.2d 1056, 1061 (11th Cir.1993) (probative value of demonstration in which adult male witness repeatedly shook a representation of an infant was substantially outweighed by unfair prejudicial effect to defendant on trial for involuntary manslaughter of his infant daughter).

is nevertheless admissible if the decision to admit fulfills the requirements set out by the Supreme Court in *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). *United States v. Record,* 873 F.2d 1363, 1375 n. 7 (10th Cir.1989). In *Huddleston,* the Supreme Court noted that the Federal Rules of Evidence contain four sources of protection to prevent the introduction of unduly prejudicial evidence under Rule 404(b):

> first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402—as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice . . .; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Huddleston,* 485 U.S. at 691–92, 108 S.Ct. at 1502. To reconcile the strict requirements of *Kendall* with *Huddleston*'s logic, this court noted that if the purpose for allowing the evidence is apparent from the record and the decision to admit the evidence was correct, " 'any failure to adhere to *Kendall* will necessarily be harmless.' " *Record,* 873 F.2d at 1375 n. 7 (quoting *United States v. Orr,* 864 F.2d 1505, 1511 (10th Cir.1988)); *see also Porter,* 881 F.2d at 885. Thus, we must examine the record to determine if the specific purpose for admitting the evidence is apparent.

We are unable to find an apparent purpose, permissible under Rule 404(b), for the evidence at issue. A review of the record reveals no more specific reasoning than that already mentioned. Admission of the evidence of defendant's prior convictions was, therefore, an abuse of the trial court's discretion.

■ Although we conclude that the admission of the evidence was error, a district court's erroneous admission of evidence does not require reversal if the error was harmless. *United States v. Flanagan,* 34 F.3d 949, 954–55 (10th Cir.1994). "A non-constitutional error is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir.1990) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). Accordingly, the question in this case is whether the admission of evidence of defendant's prior battery convictions had a substantial influence on "the jury's verdict in the context of the entire case against him." *United States v. Short,* 947 F.2d 1445, 1455 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992).

■ In determining whether a trial court's error was harmless, we review the entire record de novo. *United States v. Perdue,* 8 F.3d 1455, 1469 (10th Cir.1993). Our review of the record here reveals substantial evidence of defendant's guilt. Defendant claimed that he was driving the car but did not shoot the gun; rather, the shot was fired by a companion in the car who jumped out of the car while it was racing away from the officers. Four police officers involved in the chase testified that they saw no one jump from defendant's car during the three minute car chase which followed the shooting. These officers also testified that defendant's car was travelling too fast to allow a person to jump out without injury. An officer also testified that he saw defendant holding a gun during the car chase. Furthermore, at least two officers testified that defendant made incriminating statements after he was arrested. Finally, when defendant testified in his own defense, the prosecutor was able to discredit much of defendant's version of the events through cross-examination and other testimony.

Because of the significant amount of evidence against defendant in the record, we find that the improperly admitted evidence of defendant's prior convictions did not substantially influence the outcome of the trial. Accordingly, we conclude that the district court's error in admitting evidence of defen-

dant's prior battery convictions was harmless.[3]

## IV. Sentencing

■ Defendant appeals his sentence on the basis that the district court erred in assessing two criminal history points for each of defendant's two previous juvenile convictions. He argues that under the United States Sentencing Guidelines (U.S.S.G.), the district court should have assessed only one point for each of these convictions.[4] In a defendant's appeal of a sentence determined under the Guidelines, this court reviews factual findings by the district court for clear error and interpretations of the Guidelines de novo. *United States v. Miller,* 987 F.2d 1462, 1465 (10th Cir.1993).

Defendant was placed on probation on December 11, 1990, for two counts of battery of a law enforcement officer. His probation was revoked in March 1991, at which time he was ordered into "the custody of the state secretary of social and rehabilitation services." The secretary ordered defendant transported to the Youth Center at Larned, Kansas, where he was confined until January 10, 1992.

■ Defendant first argues that placement into the custody of the state secretary of social and rehabilitation services is not a "confinement" within the meaning of U.S.S.G. § 4A1.2(d)(2)(A). Section 4A1.2(d)(2)(A) requires the addition of two points "for each adult or juvenile sentence to confinement of at least sixty days." Although "sentence of confinement" is not defined in the Guidelines, "sentence of imprisonment" is defined as "a sentence of incar-

ceration and refers to the maximum sentence imposed." U.S.S.G. § 4A1.2(b).

While this court has not yet addressed the issue, the Sixth and Eleventh Circuits have held that commitment to the custody of the state's juvenile authority constitutes "confinement" within the meaning of U.S.S.G. § 4A1.2(d)(2)(A). *United States v. Fuentes,* 991 F.2d 700, 702 (11th Cir.1993); *United States v. Kirby,* 893 F.2d 867, 868 (6th Cir. 1990); *United States v. Hanley,* 906 F.2d 1116 (6th Cir.), *cert. denied,* 498 U.S. 945, 111 S.Ct. 357, 112 L.Ed.2d 321 (1990). In each case, the defendant's criminal history included a juvenile adjudication at which the defendant was committed to the custody of the appropriate state agency. The state agency then placed each defendant in a confinement facility.

Here, defendant's situation is materially indistinguishable from the circumstances in *Fuentes* and *Kirby.* Defendant was confined to the Larned Youth Center by order of the secretary, in whose custody he was placed by the court. His confinement was involuntary, so that he was not free to leave the Youth Center. We therefore hold that defendant's placement into the custody of the state secretary of social and rehabilitation services was a "confinement" within the meaning of U.S.S.G. § 4A1.2(d)(2)(A).

■ Defendant next argues that because the orders committing him to the secretary's custody lacked a release date, they cannot be considered sentences to confinement of "at least sixty days" under U.S.S.G. § 4A1.2(d)(2)(A). Defendant bases this argument on the commentary to section 4A1.2,

---

**3.** Defendant also argues that the effect of the improper admission of the rule 404(b) evidence was cumulatively prejudicial to defendant when added to the prejudicial effect of the admission of the courtroom demonstration. Because the courtroom demonstration was properly admitted, there could be no cumulative prejudice in this case.

**4.** The applicable provision of the Guidelines reads:

(d) *Offenses Committed Prior to Age Eighteen*
(1) If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3

points under § 4A1.1(a) for each such sentence.
(2) In any other case,
(A) add 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;
(B) add 1 point under § 4A.1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).
U.S.S.G. § 4A1.2(d). Defendant contends that his previous juvenile offenses fall under subsection (2)(B) instead of (2)(A) of this provision.

which states that the "length of a sentence of imprisonment is the stated maximum.... [C]riminal history points are based on the sentence pronounced, not the length of time actually served." U.S.S.G. § 4A1.2, comment. (n. 2). The application note to section 4A1.2 gives several examples to clarify the meaning of "stated maximum":

> [I]n the case of a determinate sentence of five years, the stated maximum is five years; in the case of an indeterminate sentence of one to five years, the stated maximum is five years; in the case of an indeterminate sentence for a term not to exceed five years, the stated maximum is five years; in the case of an indeterminate sentence for a term not to exceed the defendant's twenty-first birthday, the stated maximum is the amount of time in pretrial detention plus the amount of time between the date of sentence and the defendant's twenty-first birthday.

*Id.* The application note does not include an example which mirrors the sentence that defendant received. Clearly, the list of examples is meant to be illustrative rather than exclusive.

In defendant's case, the orders placing him into the secretary's custody lacked a maximum sentence. Under Kansas law, however, a juvenile committed to the custody of the secretary must be released upon reaching twenty-one years of age. Kan.Stat.Ann. § 38–1675 (1993). The maximum sentence was thus for a term not to exceed defendant's twenty-first birthday.

 Defendant's reliance on the application note's admonition against using the length of time actually served is misplaced. The Guidelines contemplate offenses for which a defendant is sentenced to more time than is actually served. Although the actual time served should not be considered the "sentence to confinement," the time served is evidence of the maximum sentence of imprisonment in cases of indeterminate sentencing. Here, defendant actually served more than sixty days. Thus, the maximum time defendant could have been confined exceeded sixty days. *Cf. Fuentes,* 991 F.2d at 702. Consequently, the district court properly adopted the presentence investigation report's finding

that defendant received a "sentence to confinement of at least sixty days."

## V. Conclusion

For these reasons, the judgment of the district court is AFFIRMED.