**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 4 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

  v.

RACHEL HERDER,

      Defendant - Appellant.

-------------------------------------------

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

  v.

CYNTHIA REDHOUSE,

      Defendant - Appellant.

No. 01-2357

(D. New Mexico)

(D.C. No. CR-00-1533-LH)

No. 01-2358

(D. New Mexico)

(D.C. No. CR-00-1533-LH)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, **HOLLOWAY**, and **ANDERSON**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Cynthia Redhouse and Rachel Herder appeal their convictions, following a jury trial, for assaulting Sheila James with a deadly weapon (a baseball bat, a metal broom handle, or a car jack) with intent to do bodily harm, in violation of 18 U.S.C. §§ 1153, 113(a)(3) and 2, and assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153, 113(a)(6) and 2. Both defendants were sentenced to concurrent terms of forty-six months in prison. Because both appeals largely raise identical issues, we have combined them for purposes of disposition.

The appellants contend that the district court abused its discretion, committing reversible error, by: (a) not allowing defense counsel to question the victim, Sheila James, on her opinion about whether she had a reputation for violence; (b) striking the testimony of Laura Yazzie regarding Sheila's reputation for violence; (c) not allowing evidence of two prior acts of violence by Sheila; and (d) not allowing Michael Prendergast to testify that three to four weeks prior to the incident he saw Sheila swinging a bat around at the trailer where the incident occurred and claiming that she would "protect herself if anybody messes with her." Additionally, the appellants contend that the district court committed plain error by failing to instruct the jury to consider Sheila's reputation for violence in determining whether she was the first aggressor.

Appellant Herder separately argues that plain error occurred when the government introduced evidence regarding Cynthia Redhouse's reputation for violence. And, both appellants claim cumulative error warrants reversal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm both convictions.

## BACKGROUND

The charges in this case arose out of a fight in a trailer located on Navajo land at Shiprock, New Mexico,[1] where the victim, 17-year-old Sheila James, was living with Mary Jane Redhouse's son, Wilfred. On July 28, 2000, 62-year-old Mary Jane Redhouse, her daughter, 40-year-old appellant Cynthia Redhouse, and Cynthia's two daughters, 23-year-old appellant Rachel Herder, and 14-year-old Candace Prendergast, drove to Wilfred's trailer to retrieve from Sheila keys to a car owned by Mary Jane but being used by Wilfred. Earlier that day Mary Jane and the three other women had seen Sheila with Mary Jane's car stopped by police for a traffic violation. Apparently Mary Jane had not known Wilfred was allowing Sheila to drive Mary Jane's car, and she disapproved.

---

[1]The parties stipulated to the statutory elements, 18 U.S.C. § 1153, that the parties involved are Indians, enrolled members of the Navajo nation, and that the altercation occurred in Indian Country. Tr. of Trial, R. Vol. VI at 867. The stipulation was read to the jury. Id.

When Mary Jane, Cynthia, Rachel and Candace arrived at the trailer, Sheila James and her friend, 20-year-old Greta Mark, along with Mark's infant son, were just leaving. However, when Sheila saw the women, she had a "bad feeling" about encountering them, so she and Greta reentered the trailer and went to the bedroom at the south end of the single-wide trailer.

Mary Jane went to the trailer, knocked on the door, and Sheila eventually came out of the bedroom and answered. The testimony differs as to the nature of Mary Jane's encounter with Sheila (Mary Jane did not testify), but there is general agreement that Mary Jane demanded the car keys and ordered Sheila out of the trailer. It is also uncontested that Sheila then returned to the bedroom and began to pack up her belongings, and that Rachel subsequently went to and entered the bedroom.

At this point the testimony sharply differs. Sheila testified that Rachel carried with her the aluminum baseball bat Wilfred kept in the living room, and struck Sheila on the left side of the head with the bat. Greta, who was looking out from the bathroom, confirmed that Rachel brought the bat in and swung it at Sheila. Rachel, on the other hand, testified that she was simply going back to the bedroom to get the car keys and that when she entered, Sheila struck her in the legs with a baseball bat.

In any event, a fight erupted in which Cynthia and then Candace joined with Rachel in fighting Sheila. It is also undisputed that the bat was used as a weapon, that it changed hands several times as the parties fought for possession of it and used it, and that Sheila was knocked to the floor with Cynthia on top of her and Rachel either partly on top or at the side. The testimony most favorable to the jury's verdict indicated that when Candace joined in, she had a broom with a metal handle which broke, leaving a jagged edge.

The three women kicked, punched, and grabbed Sheila, as well as hitting her with the bat, and Candace and Rachel took turns hitting Sheila with the metal broom handle. Sheila, at the least, hit Cynthia and Rachel in the chest with the bat and probably struck both Cynthia and Rachel in other spots with the bat, as well as striking them with her fists and feet.

As indicated above, not too far into the fight Sheila was knocked to the floor where she remained until Cynthia, Rachel and Candace broke off the altercation. They testified that they did so when Sheila, who was then on the ground crying and screaming out as if in excruciating pain (R. Vol. VII at 492), exclaimed she was pregnant. Sheila testified that she had already given that information to Mary Jane while they talked in the living room, and Greta Mark testified that she heard Mary Jane tell Rachel to "wash out the baby" before Rachel went to the bedroom.

During the fight Greta left and, toward the end, Candace, who was told by Cynthia to "call the cops," apparently left. However, Sheila testified that Rachel and Cynthia returned to the bedroom immediately after leaving and forced open the door which Sheila, after getting to her feet, was trying to hold shut, reentered the room, grabbed the bat and part of the broom handle and took them away. Officers later checked Mary Jane's truck and the area immediately around Cynthia's residence, but did not see the bat or part of the metal broomstick.

After the altercation Mary Jane, Cynthia, Rachel and Candace left in their truck. Sheila, worried about a miscarriage due to the kicks she had received in her abdomen, went into the bathroom to see if there was blood in her urine. It was then that she discovered severe bleeding from a wound in her back, which she then examined by looking in a mirror. At first she thought the wound was caused by one of the women hitting her with a car jack that was on the bedroom floor, and she reported that in her initial account to the police. That report led to the inclusion of the jack as a weapon in the indictment.

The injury consisted of a rounded gouge out of her flesh, about three inches in length, and a puncture wound at least three to four inches deep in the lower right side of her back. The defendants claimed she fell on the jack, and that is what caused the wound in her lower back. However, based on his investigation, FBI Agent Frank Chimitz testified that the injury was consistent with the

cylindrical metal broomstick, and that the car jack could not have caused a wound of the type and dimensions in question. That testimony, which was not refuted in any significant way (and was not objected to on grounds of his qualification to give an expert opinion), was corroborated by medical and other testimony from officers who saw the size and shape of the wound. Additionally, the jury had for inspection a piece of the broom handle and pictures of the car jack to compare with, among other things, Agent Chimitz' testimony, including his description of the blood on the jack appearing only in the form of drops.

Cynthia, Rachel and Sheila all suffered bruises and contusions, and Candace (who did not testify) complained to an investigator that she had a sore left shoulder. However, Sheila was clearly the most injured, with bruises and contusions all over her body, including severe bruising and swelling on the left side of her head where she said Rachel first hit her with the bat. Her face and lips were swollen and she was bleeding from her nose and from the wound in her right side.

Bleeding and injured, Sheila picked up the car keys from where they were lying on the bed (the appellants did not take them), got into the car she had been driving earlier, and drove directly to the police station. According to officers at the station, Sheila was trembling, moaning and crying, and left a trail of blood down the hall to the room where she was interviewed, reporting that she had been

attacked. Officers at the station called an ambulance, which took Sheila to the hospital. She was hospitalized for three days due to the potentially life threatening stab wound in her lower back; although, as it turned out, the wound was not life threatening.

The four other women saw Sheila drive into the police station parking lot, but did not follow. Instead, they drove to Cynthia's residence, ostensibly to get Albuterol because Rachel was having an asthma attack. They called the police from there, about twenty minutes after Sheila had arrived at the station. The police had also received an earlier call, at about the time Sheila arrived, reporting the altercation. The caller was not identified.

Police officers proceeded to Wilfred's trailer and secured the scene. Other officers, Mark Scott and Alesia Barber, went to Cynthia's residence where they interviewed Mary Jane, Cynthia, Rachel and Candace. They then arrested Cynthia and Rachel.

Later the same evening, Agent Chimitz and Criminal Investigator Monique Maria examined Wilfred's trailer. They observed no signs of a struggle in the living room, where Mary Jane first confronted Sheila. They then inspected the bedroom, where the fight occurred, and adjoining bathroom, taking notes, and pictures of blood and other items. The pictures were introduced in evidence at trial. The examination included an inspection of the car jack and the entire

bedroom for blood and weapons. They found and took into evidence one end of a broken metal broom handle, which had no blood or flesh on it. However, the other end of the handle and the bat were not on or around the premises. They were never found.

**DISCUSSION**

### I.   Exclusion of Specific Instances of Conduct/Character Evidence

At trial, the appellants relied on a claim of self-defense. Thus, it was important to the defense to establish that Sheila was the aggressor in the fight. To help prove that point, defense counsel proposed to introduce evidence of three prior instances of conduct from which the jury could infer that Sheila had a violent character and, acting in conformity therewith, started the fight.

The three instances proffered by the defense were as follows: (1) Laura Yazzie would testify that about a year before the fight Sheila hit Laura's husband, Herbert, on the head with brass knuckles; (2) Laura would also testify that about eight months before the fight she saw Sheila throw a liter bottle of Coke which struck an elderly woman, Grace Yazzie, on the arm; and (3) Michael Prendergast, Rachel's 16-year-old brother, would testify that three or four weeks before the fight he saw Sheila at her trailer swinging the bat used in the fight and saying that "she will protect herself if anybody messes with her." R. Vol VII at 389.

When making this proffer to the court, during a bench conference, defense

counsel made a passing reference to Federal Rule of Evidence 404(b) as a ground

for admissibility of all three incidents, but clearly and repeatedly referred the

court to Rules 404(a)(2) and 405 as the basis upon which the testimony was being

proffered.  Id. at 390-94.  Counsel summed up his position, and the court ruled, as

follows:

> MR. DAVIS:   I'm offering the evidence pursuant to 404(a)(2).
> And the question is how I prove that.  I'd like to inquire into specific
> incidents of conduct.

Id. at 392 (emphasis added).

The court then ruled as follows:

> THE COURT:   The evidence of a person's character is not
> admissible for the purpose of proving action and conformity
> therewith on a particular occasion, except that character of the victim
> under 404(a)(2) may be shown, but this has to be shown according to
> the Tenth Circuit in its decision in *United States v. Telemonte* [sic],
> 981 F.2d 1153, approved again in *United States v. Yazzi* [sic], 188
> F.3d 1178.  Those cases also held that specific instances of violent
> acts may not be used to show character.

Id. at 392-93 (emphasis added).

As indicated by the ruling, the court prohibited counsel from asking

witnesses about the specific incidents in question.  The court's ruling likewise

prohibited counsel from questioning Sheila on cross-examination about her own

opinion of her reputation:

So the objection is sustained. I will tell the jury to disregard the question. You may cross-examine, but you cannot introduce her [Sheila]—you cannot introduce evidence of her reputation through her.

Id. at 393.

These rulings form the basis of three of the issues raised by the appellants on appeal. In general, the appellants contend that the district court erred in ruling that they could not offer testimony regarding the three specific instances of conduct described above as evidence of Sheila's allegedly violent character because such testimony would permit the defense to pursue the inference that Sheila was the aggressor. As indicated, at trial defense counsel cited Federal Rules of Evidence 404(a)(2) and 405 as grounds for the admissibility of that evidence. Those rules, as relevant, provide as follows:

> **Rule 404.** Character Evidence Not Admissible To Prove Conduct; Exceptions; Other Crimes
> (a) **Character Evidence Generally.**—Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
> . . .
> (2) **Character of Alleged Victim.**—Evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor.

Fed R. Evid. 404(a)(2).

**Rule 405.**  Methods of Proving Character

**(a) Reputation or opinion.**  In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.  On cross-examination, inquiry is allowable into relevant specific instances of conduct.

**(b) Specific instances of conduct.**  In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

Fed. R. Evid. 405(a) and (b).

In reviewing the appellants' claims of error on the issues in question, we apply the highly deferential abuse of discretion standard with respect to the district court's rulings.  United States v. Talamante, 981 F.2d 1153, 1155 (10th Cir. 1992).  A court abuses its discretion when its decision is "arbitrary, capricious, whimsical, or manifestly unreasonable."  United States v. Combs, 267 F.3d 1167, 1176 (10th Cir. 2001) (quotation and citation omitted).

A.    **Exclusion of Testimony Regarding Specific Instances of Conduct Alleged to be an "Essential Element" of the Defense Under Rule 405(b)**

Under Fed. R. Evid. 404(a)(2), specific instances of conduct may be relevant to the subject of character.  But, as the district court correctly observed, "[F]ederal Rule of Evidence 405 establishes the permissible methods of proving character under Rule 402(a)(2)."  Talamante, 981 F.2d at 1156 (citing Perrin v. Anderson, 784 F.2d 1040, 1045 (10th Cir. 1986)).

Accordingly, the appellants rely on Rule 405(b) which permits proof of specific instances of a person's conduct when character or a trait of character is an essential element of the defense. They argue that when a defendant claims self defense, the allegedly violent character of the purported victim is clearly an essential element of the defense, permitting an inference that the alleged victim was the first aggressor.

However, it is the law of this circuit that "a party may present testimony concerning specific instances of conduct only when 'character is in issue in the strict sense.'" Talamante, 981 F.2d at 1156 (quoting Perrin, 784 F.2d at 1045). "Character is directly in issue in the strict sense when . . . the existence or nonexistence of the character trait itself determines the rights and liabilities of the parties." Perrin, 784 F.2d at 1045 (quotation omitted); see also United States v. Keiser, 57 F.3d 847 (9th Cir. 1995) ("The relevant question should be: would proof, or failure of proof, of the character trait by itself actually satisfy an element of the charge, claim, or defense? If not, then character is not essential and evidence should be limited to opinion or reputation."); Weinstein's Fed. Evid. (2d Ed. § 405.05[3]); W. Strong, McCormick on Evidence, §§ 187, 193 (5th ed. 1999).[2] Thus, "[w]hen character evidence is used circumstantially to create an

_____

[2]For a contrary view relating to cases involving claims of self defense, the appellants cite three state court cases, the most representative of which is Heidel
(continued...)

-13-

inference that a person acted in conformity with his or her character, Rule 405 allows proof of character only by reputation and opinion." Talamante, 981 F.2d at 1156.

Since character was not directly in issue in the strict sense in this case, the district court properly ruled that character evidence regarding Sheila was limited to reputation or opinion evidence. Cynthia concedes the point, seeking only to preserve the issue for possible en banc review, or appeal to the Supreme Court. Redhouse's Br. at 34.

### B. Preclusion of Cross-Examination of Sheila by Defense Counsel About Sheila's Opinion as to Her Reputation for Violence

The government called the victim, Sheila, to testify about the fight. None of the questions asked related to Sheila's reputation. At the beginning of cross-examination by Rachel's counsel, Michael Davis, Davis asked: "It's true, is it not, that you [Sheila] have a reputation in the Shiprock area for violence?" R. Vol. VII at 388. Sheila answered, "No," id., at which point government counsel requested a bench conference during which he objected to the question, leading to the court's ruling, quoted above, sustaining the objection and striking the question.

---

[2](...continued)
v. State, 587 So. 2d 835 (Miss. 1991). They, of course, do not control here.

The appellants contend that the district court erred in precluding them from cross-examining Sheila as to her character.  They cite no authority which would support that argument under these circumstances.  Rule 405(a) only permits cross-examination relating to specific instances of conduct when the opposing side introduces evidence regarding the reputation of the witness.  Cf., e.g., United States v. McHorse, 179 F.3d 889, 901-02 (10th Cir. 1999) (holding that Rule 405(a) provides that "once evidence of defendant's character is offered by the defendant . . . the government may counter that evidence on cross-examination by referencing relevant specific instances of conduct"); see also W. Strong, McCormick on Evidence, § 191 (5th ed. 1999); Weinstein's Fed. Evid. (2d Ed. § 405.03[2][a]).  That was not the case here.

As for the limited question regarding the witness's opinion as to her own reputation, it was already clear that she denied having a reputation for violence, so a repeat of that answer would not have assisted the defense.  And, cross-examination of that answer in the form of specific instances of conduct would only be a tactic to do what the rules themselves do not contemplate.  In short, defense counsel's tactic would amount to bootstrapping to get into a prohibited line of questioning.  See, e.g., United States v. Gilliand, 586 F.2d 1384, 1389 (10th Cir. 1978).

The district court did not abuse its discretion by precluding defense counsel from cross-examining Sheila on reputation.

### C. Preclusion of Testimony by Michael Prendergast That he Saw Sheila With the Bat and Heard Her Say She Would Protect Herself if Anybody Messes with Her

As indicated above, when defense counsel made his initial proffer with respect to three alleged incidents of violent conduct, he referred once to Fed. R. Evid. 404(b) without differentiating among the incidents. When the defendants put on their case, counsel called Michael Prendergast, Rachel's 16-year-old brother, who was permitted to testify that Sheila had a reputation for violence and untruthfulness. The district court cut off the witness when it appeared he might get into details about the baseball bat incident and Sheila's statement. Defense counsel remained silent on the point. He did not make any proffer or argument to the court with respect to permissible grounds for admissibility, whether under Fed. R. Evid. 404(b), as impeachment of answers given by Sheila during her testimony, or otherwise.

The appellants now contend that the district court erred in not permitting testimony by Michael on this subject. They argue that under Rule 404(b)[3] the

[3]**(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in
(continued...)

proffered evidence that Michael saw Sheila swinging the bat and "claiming she will protect herself if anybody messes with her," R. Vol. VII at 389, would be admissible to show motive, opportunity, intent, preparation, plan and knowledge. Herder's Br. at 25.[4]

The rule in this circuit is clear that a party offering evidence under Fed. R. Evid. 404(b) has the responsibility to "precisely articulate the purpose" for which the evidence is to be admitted. See United States v. Birch, 39 F.3d 1089, 1093 (10th Cir. 1994); United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985). A broad statement invoking rule 404(b) is not enough. See United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000). Defense counsel failed to articulate any basis for admissibility of the alleged incident, and the district court had no obligation to guess at or formulate some ground for admission, and then rule on that formulation.[5] Indeed, as the record shows, counsel's arguments for

---

[3](...continued)
conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, . . . .

Fed. R. Evid. 404.

[4]The appellants do not contend that any of this, or other specific act, evidence was admissible for purposes of showing the defendants' state of mind.

[5]Even if counsel had argued some basis for admissibility of the challenged evidence, that would still leave unanswered the outcome of applying the test required by Fed. R. Evid. 403, which would include the possibility of confusion

(continued...)

-17-

admissibility actively steered the court away from any consideration under Rule 404(b), and stressed only Rule 404(a)(2).

In stating the general rule, the Birch court did acknowledge an exception where the 404(b) purpose of the evidence is "apparent from the record." Birch, 39 F.3d at 1094. Appellants argue for the first time in their reply briefs that they are entitled to invoke this exception because the 404(b) purpose of this evidence was apparent from the record. See Redhouse's Reply Br. at 6; Herder's Reply Br. at 1-2.

Arguments raised for the first time in a reply brief need not be addressed. Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000). Nevertheless, we point out that Birch is clearly distinguishable on its facts. In that case, the government informed the court and defense counsel prior to the trial that it intended to introduce Rule 404(b) evidence for the purpose of proving the defendant's "knowledge, identity and absence of mistake or accident." Birch, 39 F.3d at 1093. Notwithstanding this explanation of the purpose for the evidence, we found that the government failed sufficiently to articulate the "relevant purpose and specific inferences" to be drawn from the evidence. Id. In contrast, here the

---

[5](...continued)
arising from potential mini trials at least with respect to the brass knuckles and the Coke bottle incidents. See Talamante, 981 F.2d at 1156 n.5.

appellants provided no statement—not even a deficient one—of the 404(b) purpose of the evidence.[6]

In any event, <u>Birch</u> does not require, as appellants' argument implies, that we comb the record in search of a permissible 404(b) purpose, which the appellants did not identify at trial, that might justify the admission of the evidence.

Finally, with respect to the appellants' arguments regarding other grounds for admissibility, such as impeachment of Sheila's direct testimony, we point out again that defense counsel made no arguments below which led to a ruling reviewable on appeal.

The district court's failure to admit the evidence under Rule 404(b) was not error.


## II. Laura Yazzie's Reputation Testimony

The defense presented Laura Yazzie as a reputation witness who would testify that Sheila had a reputation for violence in the community. When asked if she knew Sheila James, Yazzie responded, "no." R. Vol. II at 451. Later she testified that she did not know who Sheila James was. <u>Id</u>. at 452. After she was

---

[6]Furthermore, the statement that "I will protect myself" hardly presents an unambiguous reason, apparent from the record, for admission to prove a first aggressor argument.

provided with an interpreter she again testified that she did not really know

Sheila. See id. at 467. She also testified that she did not know how many people

she knew who knew Sheila. See id.

After hearing the government's cross-examination, in which Yazzie again

denied knowing Sheila, the district court struck Yazzie's testimony for lack of

foundation.[7] Appellants argue that this was error because any deficiencies in

Yazzie's testimony went to the weight of, and not the foundation for, her

testimony. We disagree.

"The admission of reputation evidence is left to the sound discretion of the

district court." United States v. Ruiz-Castro, 92 F.3d 1519, 1529 (10th Cir.

1996). A reputation witness must have "such acquaintance with the [person], the

community in which he has lived and the circles in which he has moved as to

---

[7]The Appellants also argue that the testimony was excluded not because it lacked foundation but because the court made an impermissible credibility judgment. We disagree. It is apparent from reading the testimony and the objections that the court's ruling was based upon grounds of insufficient foundation which went directly to admissibility. See R. Vol. VII at 465-67.

speak with authority on the terms in which generally he is regarded."[8]  Michelson

v. United States, 335 U.S. 469, 478 (1948); Ruiz-Castro, 92 F.3d at 1529 (same).

Yazzie's testimony, which was rife with equivocations and inconsistencies,

evidenced her lack of familiarity with Sheila and her reputation in the community.

The appellants did not give the court any additional evidence to suggest that

Yazzie was familiar with Sheila or her community.  The record supports the trial

court's conclusion that there was insufficient foundation for Yazzie's testimony.

"Particularly in light of the abuse of discretion standard applicable . . . we decline

to second-guess the district court's conclusion on the record before us."  United

States v. McVeigh, 119 F.3d 806, 814 (10th Cir. 1997).


## III.   Jury Instructions

Appellants next argue that the instructions to the jury were erroneous.

They point to two alleged mistakes:  (1) the court illogically instructed the jury to

---

[8]Appellants also argue that Yazzie's testimony should be evaluated as opinion, rather than reputation, character evidence.  Herder's Br. at 28-29. Opinion testimony need not have the same foundation as reputation evidence; it requires only that the witness have personal knowledge and an opinion—not that the witness know the person and her community.  However, this argument is not supported by the record.  Yazzie was never asked her opinion of Sheila's character.  Rather, defense counsel asked Yazzie if she knew Sheila's reputation in the community.  R. Vol. VII at 464-66.  Since the defense never solicited opinion testimony, we will evaluate the adequacy of the foundation for Yazzie's testimony under the reputation standard.

consider Sheila's reputation for violence when considering her credibility; and (2)

the district court failed to include a separate instruction directing the jury to

consider Sheila's reputation for violence when determining who was the first

aggressor.

The district court instructed the jury as follows:

Instruction No. 12
    The Defendants have offered evidence of having acted in self-defense.
    Use of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force. However, a person must use no more force than appears reasonably necessary in the circumstances.
    . . . .
    The Government has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense as it has been described in this instruction.

Instruction No. 13
    You have heard the testimony of Sheila James. You also heard testimony from Michael Prendergast concerning his opinion about whether that witness is a truthful person and the witness's reputation, in the community where the witness lives, for telling the truth and for violence. It is up to you to decide from what you heard here whether Sheila James was telling the truth in this trial. In deciding this, you should bear in mind the testimony concerning the witness's reputation for truthfulness and violence as well as all the other factors already mentioned.

R. Vol. I, Court's Instructions to the Jury, Instructions No. 12, 13.

There was no objection to these instructions. Absent an objection at trial,

we review jury instructions for plain error. See United States v. Fabiano, 169

F.3d 1299, 1302 (10th Cir. 1999). Under the plain error standard Appellants

"must show:  (1) an 'error,' (2) that is 'plain,' which means 'clear' or 'obvious' under current law, and (3) that 'affects substantial rights.'" Id. 1303 (citing United States v. Olano, 507 U.S. 725, 732 (1993)).  Under this standard we may correct an error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 732 (quotation and citation omitted).  "[W]e examine [instructions] as a whole to determine whether the jury may have been misled, upholding the judgment in the absence of substantial doubt that the jury was fairly guided." United States v. Wiktor, 146 F.3d 815, 817 (10th Cir. 1998) (quotation omitted).

According to appellant Herder, at trial "the only disputed issue [was] who was the first aggressor." Herder's Reply Br. at 1.  Sheila testified that she was not the first aggressor.  In considering her credibility on this topic, her reputation for violence was relevant information for the jury to weigh.  The instruction to consider her reputation for violence when determining her credibility was neither "illogical" nor "nonsensical" as the appellants argue.  Instead, it directed the jury to consider all available evidence when evaluating Sheila's credibility.

Appellants' second contention is that the district court should have given a separate instruction directing the jury to consider Sheila's reputation for violence when considering who was the first aggressor.  Appellants do not argue that Instruction No. 12 was an incomplete or inaccurate statement of the law, rather

they argue that it was insufficient. Appellants, however, did not offer any alternate instruction at trial. In the presence of a proper statement of the law of self-defense, mere failure to give an additional instruction telling the jury to consider the parties' reputations for violence when evaluating the self-defense claim does not create "substantial doubt that the jury was fairly guided." Wiktor, 146 F.3d at 817. The court's instruction did not constitute plain error.

## IV. Rachel Herder's Plain Error Contention as to Evidence Regarding Cynthia Redhouse's Reputation for Violence

At trial, counsel for Rachel Herder elicited testimony from Michael Prendergast that Sheila had a reputation in the community as a violent and untruthful person. R. Vol. VII at 456-57. The purpose of the evidence was to support the claim—asserted by both defendants—that Sheila was the first aggressor and that the defendants were acting in self-defense.

On rebuttal, the government called Officer Dwayne Vigil who testified that the defendant, Cynthia Redhouse (Rachel's mother), had a reputation in the community as a person "prone to violence." Id. at 560. Neither counsel for Cynthia nor counsel for Rachel objected to that testimony.

Rule 404(a)(1) of the Federal Rules of Evidence, set out more fully above, provides, as relevant:

**(1) Character of Accused.** — . . . if evidence of a trait of character of the alleged victim of the crime is offered by <u>an</u> accused and admitted under Rule 404(a)(2), evidence of the same trait of character of <u>the</u> accused offered by the prosecution;

Fed. R. Evid. 404(a)(1) (emphasis added).

Rachel contends that under a plain language reading of Rule 404(a)(1), the government can only introduce character evidence against "<u>the</u> accused" who offered character evidence against the victim. Thus, since Cynthia was not "the accused" who offered character evidence against Sheila, the court committed plain error by admitting rebuttal evidence about Cynthia's character. Put another way, since Rachel was the one who elicited reputation testimony against Sheila, then Rachel was the only defendant against whom the government could offer rebuttal character evidence.

In response, the government argues that "the accused" can be read collectively to apply to all co-defendants or, in any case, the drafters did not think of a co-defendant situation and could not have intended the limitation envisioned by Rachel since it would allow counsel for co-defendants to manipulate the Rules. Because the present wording of the Rule in question has only been in effect since the year 2000, it has not been interpreted in any prior case; but, in any event, the issue here falls into a unique category which neither party addresses at any length.

First, it is notable that Cynthia, the defendant whose character was attacked, not only did not object at trial, she also does not join in raising the issue on appeal. This is particularly significant since, according to Rachel's view, the Rule allegedly violated here relates solely to Cynthia and her protection against adverse character evidence. See, e.g., Rachel's reliance in her reply brief on Michelson v. United States, 335 U.S. 469, 475-79 (1948). So, at the very least, the issue at the outset must be modified to whether a co-defendant has any right to object at all, or to claim plain error, when the accused, whose immunity under Rule 404(a) from character evidence has been violated, has no objection to the introduction by the prosecution of character evidence against her.

However, the issue is even more fundamentally altered when looked at from the standpoint of Rachel's burden to show prejudice under the plain error rule. She contends she was prejudiced by evidence of Cynthia's character trait of being "prone to violence" since the jury could draw the inference of "like mother, like daughter." Herder's Br. at 34.[9] But the problem with the issue as thus distilled is that the alleged prejudice to Rachel remains the same whether or not Rule

---

[9]Rachel also argues that the character evidence would suggest that Cynthia, not Sheila, was the first aggressor, thus casting doubt on the self-defense position upon which Cynthia and Rachel jointly relied. But no one disputed at trial that Rachel entered the bedroom first, that the fight began between Sheila and Rachel, and that the first aggressor question was solely between them. So Rachel's argument that Cynthia might be seen as the first aggressor is wholly lacking in support.

404(a)(1) was violated. So, it seems irrelevant whether there was or was not error under Rule 404(a)(1). Under these circumstances, it is highly doubtful whether Rule 404(a)(1) was violated as to Rachel, and, if any error exists, it is hardly plain.

Regardless, assuming, *arguendo,* that Rule 404(a)(1) was plainly violated, at least as to Cynthia, Rachel still must show prejudice under the plain error rule. The admission of Cynthia's character trait—"prone to violence"—does not constitute plain error as to Rachel unless the "error" substantially affected the fairness, integrity, or public reputation of her trial. See Olano, 507 U.S. at 732. We are unpersuaded that this demanding test has been met here.

The district court instructed the jury that it should weigh the evidence separately against Rachel and Cynthia; in other words, not to speculate that Rachel was prone to violence just because her mother, Cynthia, was. The court instructed the jury as follows:

> Instruction No. 7
> A separate crime is charged against one or more of the defendants in each count of the indictment. Each count, and the evidence pertaining to it, should be considered separately and individually, the fact that you may find one or more of the accused guilty or not guilty of any of the crimes charges should not control your verdict as to any other crime or any other defendant. You must give separate consideration to the evidence as to each defendant.

R. Vol. I, Court's Instructions to the Jury, Instruction No. 7 (emphasis added). We presume that a jury follows the court's instructions. See Weeks v. Angelone,

-27-

528 U.S. 225, 234 (2000); Battenfield v. Gibson, 236 F.3d 1215, 1225 (10th Cir. 2001). The court's instruction, when followed, was sufficient to avoid any prejudice to Rachel.

Rachel contends that she was prejudiced because in this context the jury would not be "capable of using the evidence of Cynthia Redhouse's violent character as proof in the case against Cynthia . . . but not using it in this way in the case against Rachel Herder." Herder's Reply Br. at 4. She argues that in the context of multiple, related defendants, the task of considering the evidence separately is simply too difficult to assume that an instruction could properly guide the jury. See Bruton v. United States, 391 U.S. 123, 131-36 (1968). Bruton, the case Herder cites for this proposition, is clearly inapposite. To avoid the harm Rachel alleges, the jury need not have done the kind of "mental gymnastics" the Bruton jury faced—considering a confession with regard to one defendant but ignoring it with regard to a co-defendant implicated by the confession. This case is far from a Bruton situation. Bruton, as well as all of the cases the Bruton court cited as examples of contexts in which it is unreasonable to believe that the jury could follow a court's instructions, involved the admission of the confession of a co-defendant which directly implicated the defendant. See id. at 135; Holt v. United States, 94 F.2d 90 (10th Cir. 1937); Mora v. United States,

190 F.2d 749 (5th Cir. 1951). The reputation evidence that Rachel argues was improperly admitted did not directly incriminate either Cynthia or Rachel.

To avoid the harm Rachel alleges, all that was required was that the jury not speculate that because Cynthia was "prone to violence," Rachel must also be prone to violence, and then further speculate that, as a result, she was the first aggressor. Considering the instructions given to the jury, and an examination of the full record, we are unconvinced that the evidence that Cynthia was "prone to violence" seriously affected the fairness or outcome of the trial as to Rachel.

Despite the appellants' contention that this was simply a case of Rachel's word against Sheila as to who was the first aggressor, the jury had far more evidence before it than that to consider. It is undisputed that Rachel went to where Sheila was packing in the back bedroom, rather than Sheila approaching Rachel or any of the others. It is also undisputed that a fight which began as one on one quickly evolved into three against one and that a new weapon, the broomstick, and then the jagged end of the broom handle, was introduced by one of the three fighting with Sheila. Sheila clearly received the most serious wounds, and the major wound was consistent with having been inflicted by the jagged end of the broken broom handle. The jury also had the testimony of officers who observed all the participants shortly after the fight, noted their demeanor and reported on their activities. The jury was also in a position to

listen to the testimony of Sheila, Greta Mark, Rachel and Cynthia and to assess the credibility of each in connection with the foregoing facts, as well as the attendant circumstances. In short, we reiterate that the demanding standards set out in Olano were not violated as to Rachel.

**V.    Cumulative Error**

We have considered all of the arguments raised by the appellants and addressed the main issues, and we conclude that no error was committed in this trial. It follows that the appellants' assertion of cumulative error also fails. See United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990).

## CONCLUSION

For the foregoing reasons, the district court judgment is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge