GOVERNMENT OF the VIRGIN
ISLANDS

v.

Luis CARINO, Appellant.

No. 79–2132.

United States Court of Appeals,
Third Circuit.

Argued April 24, 1980.
Decided Aug. 20, 1980.

Allan A. Christian, argued, Frederiksted, V. I., for appellant.

Ishmael A. Meyers, U.S. Atty., Douglas R. Schwartz, Asst. U.S. Atty., District of Virgin Islands, Christiansted, V. I., David B. Smith, argued, Dept. of Justice, Washington, D. C., for appellee.

Before ADAMS, MARIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

Luis Carino appeals from his conviction for assault with intent to commit mayhem and possession of an unlicensed firearm.[1] At his jury trial, Carino claimed that he acted in self–defense. On appeal he argues that it was error for the district court to have excluded evidence of the victim's prior conviction for manslaughter which he wanted to use in order to show that the victim was the aggressor, to impeach her credibility and to show his state of mind at the time of the crime. For the reasons that follow, we will affirm the judgment of conviction.

### II.

Luis Carino and Norilys Richardson, the complaining witness, lived together in St. Croix for about eighteen months. The relationship, for at least some period, was characterized by violence between them. They separated approximately two weeks before the incident in question. On that day, Richardson was talking to a neighbor, Moises Carmona, outside of the housing project where Richardson lived. Carino and his cousin Nelson Carino arrived and joined Carmona and Richardson. After a brief conversation, Carino and Richardson began to argue. According to Richardson, Carino took a stick and hit Richardson on the face and body. She tried to defend herself by looking for something behind a tree and by holding on to the stick which Carino was using to hit her. Carino then pulled a gun out of his jacket and fired at Richardson, shooting her with three bullets which caused extensive hemorrhaging and multiple internal injuries. Richardson was required to have emergency surgery which included the removal of her ruptured spleen.

Although several people observed the shooting, no one came to Richardson's aid. Richardson begged Carino to take her to a hospital. After she assured him that she would not "rat" on him, he agreed to help her. He carried her to a road where he attempted to flag a car down. Eventually, a police car stopped for them.

During the ride to the hospital, Carino told a police officer that they had been attacked by someone in a green army jacket. However, once Richardson was alone with a police officer in the hospital, she indicated that in fact Carino had shot her. Richardson's version of the facts as set forth above was substantiated by eye–witnesses.

Carino's testimony presented an entirely different version of the facts. According to Carino, Richardson came up to him when he was sitting on a bench and hit him with a stick. He then took the stick and hit Richardson on the head. She then reached into her jacket, and he rushed her, grabbed her hands and took a gun from her pocket. Richardson threatened him saying she was going to kill him, that he was "going to be the second man she kill[ed], because she killed a man." She then ran back, picked up and broke a bottle, and ran towards him with the sharp glass saying " 'I am going to kill you.'—I be the second one to kill [sic]." At this point in the testimony, there was a sidebar conference at the request of the prosecuting attorney who objected to the

---

1. Carino was prosecuted and found guilty under V.I. Code Ann. tit. 14, §§ 295(3), 2253 and 2254 (1964 & 1978 Supp.). He was sentenced to a total of ten years imprisonment for the two crimes.

references to the prior killing by Richardson. The court instructed Carino not to refer in any way to the prior crime or Richardson's conviction for voluntary manslaughter.

Shortly before the trial, the Government had moved *in limine* to prevent the defense from using Richardson's past conviction for voluntary manslaughter for any purpose other than to impeach her credibility, which the Government conceded was permissible under Rule 609 of the Federal Rules of Evidence. The defense argued that it had a "right to ask this question under [609(a)]" because it would show defendant was fearful of Richardson, since he claimed she had wounded him on previous occasions, and therefore defendant's "state of mind [was] important, knowing her [Richardson's] propensity for violence." The court granted the Government's motion, concluding:

> I would say that [the Government] is right, that the prejudicial effect of [admitting the conviction] far outweighs any probative value. You are getting into the area of a character trait and you are trying then to show that character trait of the witness, the victim, by going into a conviction that has nothing to do with this man. He may have known about it but that doesn't mean she has a potentiality for violence.

After the presentation of the Government's case, Carino, out of the jury's presence, requested the court to reconsider its "determination . . . to exclude the testimony under Rule [609(a)]." The Government again argued that while the conviction could properly be admitted for impeachment purposes, it could not be used to demonstrate the victim's propensity to commit a particular crime. The court ruled:

> So far there has been no reason to use [the conviction] for impeachment so the only reason you could use it would be to show a propensity or trait of character, and I just wouldn't permit that.

Thereafter Carino, who had made no effort to impeach Richardson's credibility by use of the prior conviction during his cross–examination of her when she testified in the Government's case in chief, made no further attempt to introduce the record of the conviction for any other purpose.

On appeal, Carino argues that it was error for the district court to have excluded Richardson's conviction. He claims that evidence should have been admitted not only for its impeachment value, but also to demonstrate his fear and to corroborate his testimony that the victim was the aggressor. He further argues that when the trial court weighed the prejudice in admitting the conviction, the court erroneously considered the prejudice to the prosecution.

## III.

Had Carino sought to impeach Richardson's credibility by the use of her conviction he could have done so.[2] From our detailed review of the record, it is clear that the court, in fact, did not preclude introduction of the conviction for impeachment purposes. Although the defense may not have understood that the court's limitation did not apply to use of the conviction for impeachment purposes, it is evident from the record that the court imposed no such limitation. The Government clearly indicated in the presence of defense counsel that it would not object to such use of the prior conviction; the Assistant United States Attorney stated twice that the conviction could be admitted for impeachment purposes. Nonetheless Carino did not attempt to

---

**2.** Rule 609 of the Federal Rules of Evidence provides, in relevant part:

> *Impeachment by Evidence of Conviction of Crime*
>
> (a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross–examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

impeach Richardson's credibility, and therefore there is no basis for holding the court erred in excluding evidence of the conviction for impeachment purposes.

█ Carino may have believed that he could use proof of the prior conviction to show Richardson's character, because the Rules of Evidence treat character of the victim as an exception to the general rule rejecting the circumstantial use of character evidence.[3] However, the nature of evidence permitted for proof of character is limited by Rule 405(a) to opinion and reputation testimony, *Government of the Virgin Islands v. Roldan*, V.I., 612 F.2d 775, 778 (3d Cir. 1979), *cert. denied*, 100 S. Ct. 1857 (1980); *Government of the Virgin Islands v. Petersen*, 14 V.I. 24, 32, 553 F.2d 324, 329 (3d Cir. 1977). *See* 2 Louisell & Mueller, Federal Evidence § 139 at 105 (1978) (hereinafter Louisell & Mueller). As we read the record, there was no effort to introduce reputation evidence of Richardson, as distinguished from her *conviction* and *prior acts*. Therefore, when the court excluded evidence of the conviction to show Richardson's character, it did not err.

However, the Rules provide an additional basis for the introduction of specific evidence of other crimes. Rule 404(b) provides:

> *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

█ Carino sought to introduce Richardson's conviction for manslaughter of her prior boyfriend to "demonstrate the fear"

and "the state of mind" of defendant at the time of the incident. Although there is no specific reference in the Federal Rules of Evidence to admissibility for that purpose, we do not read the Rules as changing the prior precedent under which certain acts of violence by the victim are admissible to corroborate defendant's position that he "reasonably feared he was in danger of imminent great bodily injury." *United States v. Burks*, 470 F.2d 432, 435 (D.C. Cir. 1972). Commentators on the Federal Rules of Evidence have reached a similar conclusion. Professors Louisell and Mueller state, "If it can be established that the accused knew at the time of the alleged crime of prior violent acts by the victim, such evidence is relevant as tending to show a reasonable apprehension on the part of the accused. Since *this* is not the circumstantial use of character evidence to prove *conduct*, such use is not barred either by Rule 404 or Rule 405." Louisell & Mueller, *supra* § 139, at 108 (emphasis in original). While such use of a victim's prior acts may not fall precisely into any of the enumerated purposes, it is close to some of them, such as "intent" and "knowledge." In any event, the enumerated purposes are not exclusive, as demonstrated by the language of the Rule authorizing use of other crimes evidence "for other purposes, *such as* . . . ." (emphasis added).

█ The court, apparently acting under Rule 403 which requires it to weigh the probative value of the evidence against the danger of, *inter alia*, unfair prejudice, and to exclude such evidence if the danger of unfair prejudice "substantially outweigh[s]" its probative value, found the prejudicial effect warranted exclusion of the evidence. *See United States v. Bocra*, 623 F.2d 281, 286 (3d Cir. 1980). However, we agree with

---

**3.** Rule 404(a) provides, in part:

(a) *Character evidence generally*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

\* \* \* \* \* \*

(2) *Character of victim.* Evidence of a pertinent trait of character of the victim of the

crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) *Character of witness.* Evidence of the character of a witness, as provided in rules 607, 608 and 609.

the defendant that evidence produced by the "defense cannot have a prejudicial effect 'to the defendant,'" *United States v. Ortega*, 561 F.2d 803, 806 (9th Cir. 1977), and there should be no balancing of prejudice to the prosecution before the defense may present its case. *See, e.g., United States v. Nevitt*, 563 F.2d 406, 408 (9th Cir. 1977), *cert. denied*, 444 U.S. 847, 100 S.Ct. 95, 62 L.Ed.2d 61 (1979).

■ Therefore, the evidence of Carino's knowledge of Richardson's conviction was admissible under Rule 404(b) to show fear or state of mind. We note that defendant failed to advise the court that it relied on Rule 404(b) as the basis for the admissibility of the evidence. *See Government of the Virgin Islands v. Edinborough*, 625 F.2d 472, at 475 (3d Cir. 1980). This would have been the preferred procedure for defense to have followed. Instead, defendant referred the court only to Rule 609(a). Nonetheless, defendant's theory for which the evidence was claimed to be admissible was clearly outlined to the court, and therefore we hold the court erred in precluding the defense from use of the prior conviction of Richardson to show Carino's state of mind.

## IV.

We must therefore determine whether the court's erroneous evidentiary ruling should be held to be reversible error. "'[A] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials," *Brown v. United States*, 411 U.S. 223, 231–32, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1973) (quoting *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953)), and the reviewing court must inquire "whether the error itself had substantial influence [on the minds of the jury.]" *Government of the Virgin Is-*

lands v. Toto, 12 V.I. 620, 629, 529 F.2d 278, 283 (3d Cir. 1976) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). Unless "there is a reasonable possibility that [the error] contributed to the conviction, reversal is not required." *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340 (1972).

In this case, there was overwhelming evidence of Carino's guilt. Two eye–witnesses testified to Richardson's version of the assault and each part of her story was corroborated. Also, despite the court's warning not to discuss Richardson's conviction, Carino commented on it three times.[4] Although the trial court admonished Carino at side–bar that he was not to mention the killing at all, no curative charge was given to the jury and no motion to strike the testimony was made in their presence. Therefore, Carino did in fact testify to his fear of Richardson because he knew she had killed her former boyfriend. Further statements of Carino's fear came before the jury when he testified to previously having been cut by Richardson.[5] We conclude, therefore, that the admission of further testimony to this effect could not have influenced the jury's decision. *See United States v. Molt*, 615 F.2d 141, 146 (3d Cir. 1980).

## V.

For the foregoing reasons, we will affirm the judgment of conviction.

---

**4.** In addition to the statements in Part II *supra*, that "[Richardson] say I are going to be the second man she kill, because she killed a man [sic]," and that "[Richardson] said 'I am going to kill you.'–I be the second one to kill [sic]," he also testified that Richardson had threatened Moises Carmona by indicating "she done kill a man already [sic]."

**5.** "I think she going to attack me because she had done cut my face already, I get six stitches and ten stitches in my hands, she cut here, here and my face, I be in the hospital for four days with ten stitches in my hand, it were wide open, so I figure she going to use knife or something to damage me again [sic]."