**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Fernando TALAMANTE, Defendant–Appellant.**

**No. 92–2010.**

United States Court of Appeals, Tenth Circuit.

Dec. 16, 1992.

David N. Williams (Don J. Svet, U.S. Atty., and Joe M. Romero, Jr., Asst. U.S. Atty., with him on the briefs), Albuquerque, NM, for plaintiff-appellee.

Ray Twohig, Albuquerque, NM, for defendant-appellant.

Before SEYMOUR, LAY,* and MOORE, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Fernando Talamante appeals his conviction and sentence for assault resulting in serious bodily injury under 18 U.S.C. §§ 1153 and 113(f). He argues the trial court erred in excluding evidence of specific instances of violent conduct of the vic-

---

* The Honorable Donald P. Lay, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

tim. He also contends the trial court misapplied the sentencing guidelines by enhancing his sentence based on infliction of a permanent or life-threatening injury. We affirm.

While driving around the Jicarilla Apache Indian Reservation in Dulce, New Mexico, Mr. Talamante and a friend noticed an acquaintance's car in a gas station. They pulled into the station, and Mr. Talamante walked over to the car. The victim, David Perea, another acquaintance of Mr. Talamante's, was sitting in the passenger seat of the car. Although the parties dispute the details of the exchange between the victim and Mr. Talamante, they agree that Mr. Talamante took three swings at the victim. His blows ruptured the victim's right eye, which resulted in surgery to remove the eye. The victim did not strike Mr. Talamante.

During the trial, Mr. Talamante contended "bad blood" existed between the victim and him. He testified the victim began insulting him as he approached the car. The victim then said, "I'm going to get you," and tried to open the car door. Because he feared the victim was coming to attack him, Mr. Talamante pushed the car door shut and then hit him. Based on this testimony, the court instructed the jury on self-defense.

Mr. Talamante also attempted to introduce evidence concerning his knowledge of several incidents involving the victim or his friends. Specifically, he sought to testify: (1) in 1986, Leonard Gonzales, a friend of the victim's, stabbed and beat him; (2) his brother, Robert Talamante, killed Alex Herrera, a close friend of the victim's, and Mr. Herrera's friends held a grudge against the Talamante family; (3) Teddy Montoya, another close friend of the victim's, stabbed him in 1988 or 1989; (4) he knew that the victim assaulted Buddy Vigil; (5) he knew that the victim assaulted Doris Hudson; and (6) he also knew that the victim and Buddy Vigil assaulted another man in 1984.

Mr. Talamante argued these incidents were crucial to his self-defense claim because they would prove the victim was the aggressor. To support the admission of this testimony, Mr. Talamante stated: "[Federal Rule of Evidence] 404(a)(2) permits the defendant to use evidence relating to his character or traits to prove that the person acted in conformity with those where a self-defense defense is raised, and where the defendant states that the victim was the aggressor." Moreover, he argued that, if the court allowed this testimony, Buddy Vigil, who was involved in two of the incidents, would testify and corroborate his knowledge of the victim's violent actions. The trial judge found no basis in the evidence to allow this testimony.[1] Mr. Talamante now argues the trial judge erred in excluding the testimony.

## I.

The district court has broad discretion in determining the admissibility of evidence. *United States v. Alexander,* 849 F.2d 1293, 1301 (10th Cir.1988). We review the trial court's evidentiary rulings for abuse of discretion. *United States v. Esparsen,* 930 F.2d 1461, 1475–76 (10th Cir. 1991), *cert. denied,* — U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992); *United States v. Harmon,* 918 F.2d 115, 117 (10th Cir. 1990). Under this standard, we will not disturb a trial court's decision unless we "ha[ve] a definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir.1986).

Mr. Talamante makes several arguments to support the admissibility of this testimony. First, he asserts testimony concerning specific instances of the victim's conduct was admissible character evidence under Federal Rule of Evidence 404(a)(2)[2] to prove that the victim was the aggressor.

---

**1.** The defendant also asked the court: "If I establish more foundation that [the victim] was the aggressor, may I then raise the issue again?" The court denied this request.

**2.** Rule 404(a)(2) provides:

(a) Character evidence generally. Evidence of a person's character or a trait of character is

Federal Rule of Evidence 405 [3] establishes the permissible methods of proving character under Rule 404(a)(2). *Perrin v. Anderson,* 784 F.2d 1040, 1045 (10th Cir. 1986). Under Rule 405, a party may present testimony concerning specific instances of conduct only when "character is in issue 'in the strict sense.'" *Id.* (quoting Fed. R.Evid. 405 advisory committee's note). When character evidence is used circumstantially to create an inference that a person acted in conformity with his or her character, Rule 405 allows proof of character only by reputation and opinion. *Id.;* Fed.R.Evid. 404(a) advisory committee's note; Fed.R.Evid. 405 advisory committee's note. In *Perrin,* we determined that use of evidence of a victim's violent character to prove that the victim was the aggressor is circumstantial use of character evidence. 784 F.2d at 1045 (citing Fed.R.Evid. 404(a) advisory committee's note); *see Government of Virgin Islands v. Carino,* 631 F.2d 226, 229 (3d Cir.1980) (Rule 405(a) limits evidence permitted for proof of character to opinion and reputation evidence). Since Mr. Talamante offered testimony describing specific instances of the victim's conduct, as opposed to reputation or opinion evidence, this testimony was not admissible under Rule 404(a)(2) to prove that the victim acted in conformity with the conduct.

■ Second, in this appeal, Mr. Talamante relies on Rule 404(b).[4] Because he had knowledge of each of the six incidents, Mr. Talamante argues they were admissible under Rule 404(b) to show his state of mind and his reasonable fear of the victim. His knowledge of the victim's and his close associates' violent conduct, he asserts, "color[ed] his reasonable interpretations of [the victim's] actions."

At trial, although defense counsel indicated the evidence was probative of Mr. Talamante's state of mind, he never mentioned Rule 404(b). In ruling on the evidence, the trial judge simply stated "[t]here's no basis on the evidence so far to allow that." Consequently, the court did not evaluate whether the evidence met the stringent criteria we have required for admission under Rule 404(b). *See United States v. Kendall,* 766 F.2d 1426, 1436 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986); *see also United States v. Harrison,* 942 F.2d 751, 759 (10th Cir.1991) (even if evidence is relevant under Rule 404(b), the court may exercise its discretion and exclude the evidence under Rule 403).[5] Thus, the record

---

not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

. . . .

(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by the accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor. . . .

**3.** Rule 405 states:

(a) Reputation and opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into specific instances of conduct.

(b) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

**4.** Rule 404(b) provides:

Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

**5.** The Rule 404(b) requirements and the Rule 403 balancing test could have led to the exclusion of most of Mr. Talamante's proffered evidence. For instance, the record does not indicate that Robert Talamante's murder of Alex Herrera and the victim's assaults of Buddy Vigil and Doris Hudson occurred close in time to the crime charged. *See Harrison,* 942 F.2d at 759. In addition, three of the specific acts did not involve the victim. The admission of these incidents could have led to collateral mini trials in which the defense and the government attempted to characterize the victim's relationship to the actors in those incidents. *See United States v. Waloke,* 962 F.2d 824, 830 (8th Cir.1992) (district court may exclude evidence under Rule 403 if it would cause undue delay or lead to collateral mini trials).

gives no indication of how the trial court would have applied Rule 404(b) in this case.

Mr. Talamante cites *Government of Virgin Islands v. Carino*, 631 F.2d at 229–30, in which the Third Circuit found evidence of the victim's manslaughter conviction admissible under Rule 404(b) to demonstrate the fear and the state of mind of the defendant at the time of the incident. The court found, although the Federal Rules of Evidence do not refer to admissibility specifically for this purpose, the Rules do not change precedent that established the acts of the victim are admissible to corroborate the defendant's contention that he reasonably feared bodily injury. *Id.* at 229 (quoting *United States v. Burks*, 470 F.2d 432, 435 (D.C.Cir.1972)). This use of a victim's prior acts, the court held, is close to some of the uses listed in Rule 404(b). *Id.* Since the 404(b) list is not exclusive, this use falls within the rule. *Id.; see also United States v. Waloke*, 962 F.2d 824, 830 (8th Cir.1992) (quoting *United States v. Barry*, 814 F.2d 1400, 1403 n. 6, 1403–04 (9th Cir. 1987)) (Rule 405(b) allows proof of specific acts of victim when character or trait of character is an essential element of a claim or defense); *United States v. Rocha*, 916 F.2d 219, 241 (5th Cir.1990) (because evidence of specific acts was probative of an issue other than character, it is admissible under Rule 404(b)), *cert. denied*, — U.S. ——, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991).

This Circuit has not addressed whether Rule 404(b) encompasses use of evidence of the victim's past conduct to demonstrate the defendant's reasonable fear. We need not determine the admissibility of the evidence under Rule 404(b), however, since, even assuming the trial court erred in excluding the evidence, we find the error was harmless. Mr. Talamante testified he felt that "there[ ] [was] going to be a fight," and, if he did not strike, the victim would come after him when he tried to walk away. On cross-examination, Mr. Talamante admitted, after he closed the car door, he "couldn't say that [the victim] was threatening" him. He also conceded that he threw the first punch. Mr. Talamante's preemptive strike, taken when the victim was not threatening him, severely weakens his self-defense claim. *See United States v. Goodface*, 835 F.2d 1233, 1235–36 (8th Cir.1987) (self-defense claim not warranted when defendant's actions indicate he failed to withdraw from conflict when he could do so safely). Although the excluded testimony may have explained his fear, we are convinced that it could not have assisted his self-defense claim significantly.[6] *See United States v. Litchfield*, 959 F.2d 1514, 1520 (10th Cir.1992).

██ Finally, Mr. Talamante argues that the trial court's decision to exclude the evidence violated his constitutional right to present a defense. The trial court's exclusion of his proffered testimony, he contends, severely impaired his ability to impeach the victim and to present a self-defense claim.

A defendant has a right based on the Fifth and Sixth Amendments to testify and to call witnesses in his favor. *Rock v. Arkansas*, 483 U.S. 44, 49–52, 107 S.Ct. 2704, 2707–09, 97 L.Ed.2d 37 (1987); *Esparsen*, 930 F.2d at 1469. These rights are not without limitation, however. *Rock*, 483 U.S. at 55, 107 S.Ct. at 2711 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045–46, 35 L.Ed.2d 297 (1973)); *Esparsen*, 930 F.2d at 1469. Mr. Talamante had the opportunity to testify, to state that he feared the victim, to argue self-defense, and to cross-examine the victim and bring out the facts related to the victim's propensity for violence. Based on these circumstances, we do not believe the trial court abused its discretion in making the evidentiary rulings or violated Mr. Talamante's constitutional right to present a defense.

## II.

The defendant's base offense level for a conviction for assault resulting in serious

---

6. Mr. Talamante also contends the trial court should have admitted the evidence under the general rules of relevance. Based on our determination that any error was harmless, we need not address this contention.

bodily injury, 18 U.S.C. § 113(f), was fifteen. U.S.S.G. § 2A2.2(a). Under this guideline section, the court may increase the base offense level by six if the victim sustained permanent or life-threatening bodily injury. U.S.S.G. § 2A2.2(b)(3)(C). The presentence report recommended a six-level increase based on permanent or life-threatening bodily injury, and the trial judge followed this recommendation.

■ Mr. Talamante argues the evidence in this case does not support the six-level increase. Specifically, he asserts the removal of the victim's right eye does not constitute permanent or life-threatening bodily injury because the victim was blind in his right eye prior to the assault. In addition, the jury convicted him of assault resulting in serious bodily injury, not assault resulting in permanent or life-threatening injury. Thus, Mr. Talamante argues, the jury never made a finding that the injury was permanent or life-threatening.

Under the sentencing guidelines, we "shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *see United States v. Backas*, 901 F.2d 1528, 1528 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 190, 112 L.Ed.2d 152 (1990). A finding of fact is clearly erroneous only "if it is without factual support in the record or if the appellate court, after reviewing all of the evidence, is left with a definite and firm conviction that a mistake has been made." *Cowles v. Dow Keith Oil & Gas, Inc.*, 752 F.2d 508, 511 (10th Cir.1985) (citations omitted), *cert. denied,* 479 U.S. 816, 107 S.Ct. 74, 93 L.Ed.2d 30 (1986).

During sentencing, the trial judge found:

[A]s to the loss of the eye, from my recollection of the evidence, ... the defendant did have sight in that eye. Indeed, he stated that he could see figures, he could see light, he could tell colors. And following the assault by the defendant, it was required to remove the eye. So I think the jury properly found the defendant guilty of the charge, and also that the loss of the victim's eye permits the Court to add the necessary points as set forth in the pre-sentence report.

In light of the testimony of the victim and a treating physician,[7] we conclude the trial court's determination is not clearly erroneous.

■ Mr. Talamante offers no support for his argument the jury did not find the assault resulted in permanent or life-threatening bodily injury. The jury instruction defining serious bodily injury was identical, in pertinent part, to the guideline definition of permanent or life-threatening bodily injury [8] and included obvious disfigurement as an example of serious injury. Moreover, the defendant fails to explain why the sentencing guidelines, which specifically allow the trial judge to enhance the base offense level based upon the seriousness of the injury, cannot distinguish between injuries for sentencing purposes. For these reasons, we conclude the trial court correctly applied the sentencing guidelines.

AFFIRMED.

7. The treating physician, Dr. Bishara, who had examined the victim in 1985, testified that he was not totally blind.

8. The jury instruction stated:
"Serious bodily injury" as used in these instructions means more than mere bodily injury, and must be of a grave and serious nature.... Examples of serious bodily injury include injuries which involve a substantial risk of death, extreme physical pain, protracted and obvious disfigurement and protracted loss or impairment of a function of a bodily member, organ, or mental faculty.
The sentencing guidelines define permanent or life-threatening bodily injury as "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." U.S.S.G. § 1B1.1, comment. (n.1(h)).