FILED
United States Court of Appeals
Tenth Circuit

September 2, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENHT CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JEFF MCMAHAN,

Defendant-Appellant.

No. 09-7007

(E.D. Oklahoma)

(D.C. No. 6:08-CR-00012-JHP-1)

---

## ORDER AND JUDGMENT[*]

---

Before **BRISCOE**, Chief Judge, **HAWKINS**[**] and **MURPHY**, Circuit Judges.

---

## I. Introduction

Jeff McMahan, the former Oklahoma State Auditor and Inspector, was
convicted of one count of conspiracy in violation of 18 U.S.C. § 371 (Count 1),
and two counts of violating the Travel Act, 18 U.S.C. §§ 1952 and 2 (Counts 8
and 9). On appeal, McMahan argues: (1) the jury was improperly instructed on
the elements of the charged Travel Act offenses and on the concept of deliberate

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**]The Honorable Michael D. Hawkins, Senior Circuit Judge, U.S. Court of
Appeals, Ninth Circuit, sitting by designation.

ignorance; (2) his conviction of both the conspiracy offense and the Travel Act offenses resulted in constitutionally prohibited dual punishment; (3) the evidence was insufficient to support his convictions; (4) the district court improperly excluded evidence of his character; and (5) the district court abused its discretion in refusing to vary downward at sentencing. Exercising jurisdiction under 28 U.S.C. § 1291 and § 3742, this court **AFFIRMS** McMahan's convictions and sentence.

## II. Background

McMahan was elected Oklahoma State Auditor in November 2002, replacing Clifton Scott, who had occupied the position for twenty years. The Oklahoma State Auditor's office took over the regulation of the abstract industry in 1984 during Scott's tenure. Its jurisdiction continued until 2008, when the Oklahoma Legislature placed the industry under the control of an independent board. Okla. Stat. tit. 1, § 22. Scott and Steve Phipps, who owned several abstract companies, both supported McMahan's candidacy. Phipps, in turn, was a close associate of former Oklahoma State Senator Gene Stipe; Phipps and Stipe had been business partners for over 30 years and owned several abstracting companies across Oklahoma, many of which they operated through a jointly owned holding company called Phipps Enterprises, Incorporated ("PEI").

Phipps provided a total of $157,882 in financial assistance to McMahan's 2002 campaign. He directed $27,000 in cash contributions to McMahan (much of

which was funneled through McMahan's wife), $77,600 in donations through straw donors, and $53,282 in-kind donations. The in-kind donations were in the form of radio jingles, campaign signs and crews, dinner theater bookings, and radio spots.

After prevailing in a close election, McMahan continued to accept gifts from Phipps. For example, in 2003 and 2004, Phipps paid for guided fishing trips to Lake Texoma for McMahan and his son. Phipps also financed trips to New Orleans for McMahan and his wife in 2003 and 2004. During the New Orleans trips, Phipps bought a ring and matching pair of earrings for McMahan's wife. In 2004, Phipps gave McMahan $6500 in cash he needed to travel to the Democratic National Convention in Boston and to sponsor a meal for the Oklahoma delegation in Boston.

In exchange for these gifts, Phipps periodically contacted McMahan for favors. For example, McMahan delayed an application by John Callaham to open an abstract company in Idabel, Oklahoma, that would have competed with one of Phipps's businesses. According to Tim Arbaugh, the abstractor registrar who worked for both Scott and McMahan, McMahan's "intent was to slow down the process of giving the permit . . . to try to prevent that application from ever succeeding so that Mr. Phipps wouldn't have a competitor."

When Idabel's state representative, Jerry Ellis, subsequently introduced legislation that would have effectively eliminated the abstracting industry in

-3-

Oklahoma, Phipps contacted McMahan and Arbaugh to plan a response. After speaking with Phipps, McMahan told Arbaugh there were "two things that are of concern here. One of them is that this is being done from Steve Phipps's area, and Steve is concerned that perhaps part of the reason for it is that Mr. Ellis is doing this to soften the ground for Mr. Callaham's application to come back into play." To appease Phipps, McMahan directed Arbaugh to "get directly involved with Mr. Ellis to try and satisfy him in whatever way necessary to remove the bill." Arbaugh subsequently negotiated an agreement to change the pricing system and cap prices on abstracts prepared by Southern Abstract in Idabel, the only abstract company in Ellis's district. Ellis, in turn, withdrew his legislation.

Phipps also called on McMahan when he needed help getting appropriations more directly from the state legislature to entities controlled by Phipps and Stipe. After Stipe pleaded guilty to charges of perjury, conspiracy to obstruct an FEC investigation, and conspiracy to violate the Federal Election Campaign Act, Phipps called McMahan to set up a meeting for him with the State Insurance Department to help him force Stipe to sell their jointly held abstracting business to Phipps. Phipps also met with McMahan and Arbaugh to secure a commitment from McMahan that he would pursue an administrative complaint against the entities jointly held by Phipps and Stipe to allow Phipps to force a favorable settlement

with Stipe.[1]  McMahan subsequently filed the complaint, even though he had been informed by his own counsel that his office had no authority to file a complaint. After the entities filed a motion to dismiss, Phipps again contacted McMahan to tell him that he wanted him to deny the motion to dismiss and send the matter to a hearing examiner so that Phipps could keep pressure on Stipe to liquidate their partnership.

In 2005, the FBI began investigating fraud allegations involving one of the entities owned by Phipps and Stipe, and the investigation eventually spread to their other businesses.  Phipps and Arbaugh agreed to cooperate in the investigation, and, as a result, the investigation's focus turned to others, including McMahan and his wife.

In 2008, McMahan and his wife Lori McMahan were charged by indictment with one count of conspiracy in violation of 18 U.S.C. § 371 (Count 1); six counts of mail fraud in violation of 18 U.S.C. §§ 1341, 1346 and 2 (Counts 2 through 7); and two counts of violations of the Travel Act, 18 U.S.C. §§ 1952 and 2 (Counts 8 and 9).  To support the conspiracy and Travel Act offenses, the Indictment alleged McMahan, in his official capacity, granted the following favors to Phipps and his entities: (1) delaying an application for an abstracting license that, if granted,

---

[1]In the administrative proceeding at issue, the auditor's office files a complaint against the certificate of authority of an abstract company. Accordingly, in the present case, a complaint was filed against a number of abstract companies in which Stipe had an interest.

could have created competition for Phipps's abstracting business; (2) helping discourage proposed legislation that would hurt the abstracting industry; (3) filing and refusing to dismiss an administrative complaint against the abstracting businesses owned by Phipps and Stipe; and (4) agreeing to retain Arbaugh as abstractor administrator.

At the close of the government's case-in-chief, the district court granted McMahan's Rule 29 motion with respect to one of the mail-fraud counts, but denied it as to the remaining counts. McMahan's defense at trial was that Phipps and Arbaugh used him as a bargaining chip to obtain leniency after Phipps's criminal activities were uncovered by the FBI. McMahan testified he did not know of the existence of the conspiracy and denied he had ever corruptly accepted anything with the intent that his official action be influenced. Although the evidence against his wife was substantial, McMahan claimed he did not know about the cash she received from Phipps; that she lied to him about retaining the jewelry from Phipps; that he had no idea his campaign had accepted funds from Phipps through straw donors; and that although he and Phipps were friends, they did not discuss business. The jury, however, also heard evidence that the co-conspirators intentionally funneled contributions through McMahan's wife and Arbaugh so that McMahan would not appear to be connected with Phipps. Further, the evidence also indicated McMahan was a diligent, detail-oriented auditor, and revealed the information he provided the FBI in three separate

interviews contained numerous inconsistencies regarding his level of knowledge of, and participation in, the conspiracy.

The jury found both McMahan and his wife guilty of conspiracy and the Travel Act violations, but not guilty of mail fraud. The district court sentenced McMahan to sixty months' imprisonment on Counts 1 and 8, to be served concurrently, and a term of thirty-seven months' imprisonment on Count 9, to be served consecutively, for a total of ninety-seven months, the advisory Guidelines' minimum. On appeal, McMahan argues: (1) the jury was improperly instructed on the elements of the charged Travel Act offenses and the concept of deliberate ignorance; (2) his conviction of both the conspiracy offense and the Travel Act offenses resulted in constitutionally prohibited dual punishment; (3) the evidence was insufficient to support his convictions; (4) the district court improperly excluded evidence of his character; and (5) the district court abused its discretion in refusing to vary downward at sentencing.

## III. Analysis

### A. Jury Instructions

McMahan contends the jury instructions on the elements of the charged Travel Act offenses did not properly inform the jury of the elements of the crime, and that the deliberate indifference instruction was legally erroneous. This court reviews "de novo to determine the propriety of a jury instruction to which objection was made at trial, and for plain error where no objection was made."

*United States v. Pappert*, 112 F.3d 1073, 1076 (10th Cir. 1997). "The appropriate standard of review for challenges to jury instructions is whether the jury, considering the instructions as a whole, was misled." *Id.* (quotation omitted). "The standard is not whether the instruction was faultless in every respect. Only where the reviewing court has substantial doubt that the jury was fairly guided will the judgment be disturbed." *United States v. Mullins*, 4 F.3d 898, 900 (10th Cir. 1993).

McMahan did not object to the Travel Act instructions at trial. Accordingly, this court reviews them for plain error. The district court provided the elements of a Travel Act violation in Instruction Nos. 12 and 13. Instruction 12 recited the relevant statutory language of 18 U.S.C. § 1952(a)(3). Instruction 13 explained that the Travel Act:

> makes it a crime for anyone to use interstate travel to promote an unlawful activity as charged in the Indictment.
>     To find the Defendants guilty of a Travel Act violation to promote state bribery, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> *First*:     The Defendants used or caused the use of interstate travel;
> *Second*:     with the intention to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of the unlawful activity described in the indictment, that is acceptance of money or goods or a valuable thing with the intent to permit Jeff McMahan's official action to be influenced; and
> *Third*:     After the use of the interstate travel, the Defendant acted, or attempted to act, in order to promote, manage, establish, carry on, or facilitate the promotion,

-8-

management, establishment or carrying on of the unlawful activity described in the indictment, that is, the acceptance of bribes.

McMahan contends this instruction misled the jury by including language criminalizing "caus[ing] the use of interstate travel," which was included to encompass the aiding and abetting statute, 18 U.S.C. § 2. McMahan argues this instruction was misleading as to him because he could not aid and abet himself in the unlawful activity of bribery of a public official. Further, McMahan argues the instruction was deficient for failing to list the elements of the state bribery offense, the predicate offense for McMahan's Travel Act violations.

McMahan's first challenge, regarding the inclusion of the aiding and abetting language, is precluded by the invited error doctrine. McMahan's proposed instruction on the Travel Act's elements included the same language he now challenges on appeal.[2] Accordingly, if there was any error in the instruction's "caused the use of interstate travel" language, that error was invited by McMahan and cannot be challenged on appeal. *United States v. Visinaiz*, 428 F.3d 1300, 1310-11 (10th Cir. 2005).

Much of McMahan's next challenge, regarding the elements of the state law bribery offense, is similarly precluded as invited error. McMahan requested an

_____

[2]McMahan's proposed instruction required the jury to be convinced beyond a reasonable doubt that "[t]he defendants used or caused the use of interstate travel."

instruction with the following summary of the state law offense: "*Second*: with intention to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of unlawful activity described in the Indictment, that is acceptance of money or goods or a valuable thing with the specific intent to permit Jeff McMahan's official action to be influenced." McMahan's proposed instruction did not list the elements of Oklahoma state-law bribery, did not include an element requiring the jury to find the bribery was "by an executive officer of a governmental unit," Okla. Stat. tit. 21, § 382, and did not feature an explanation of the concepts of "corrupt intent" or "quid pro quo." As a result, McMahan's challenges pertaining to these alleged errors in the district court's instructions are precluded as invited error. *Visinaiz*, 428 F.3d at 1310-11.

The district court, however, omitted the word "specific" from McMahan's proposed instruction, a decision which he challenges on appeal and this court reviews for plain error because McMahan did not raise it before the district court. As noted, the jury was properly instructed to find McMahan guilty if it determined he used interstate travel to promote an unlawful activity, in this case bribery of a state officer in violation of Oklahoma law. McMahan advances no creditable argument as to why omission of the word "specific" from the instruction's description of Oklahoma state-law bribery amounts to plain error. Indeed, the Oklahoma Uniform Jury Instructions recommend a jury be instructed, as it was here, to consider whether a defendant acted "with intent to permit his/her official

-10-

action to be influenced." Okla. Uniform Jury Instructions, Crim.2d, § 3-16 (2009).

Accordingly, the district court did not err at all in so instructing the jury.

McMahan's challenge to the jury instruction on the elements of the Travel Act

violation therefore fails in its entirety.

McMahan next argues the district court's deliberate ignorance instruction

was improper because it did not require the jury to find deliberate ignorance

beyond a reasonable doubt, and because the instruction was inappropriate in the

context of a conspiracy offense. The district court instructed the jury as follows:

> When the word "knowingly" is used in these instructions, it
> means that the act was done voluntarily and intentionally, and not
> because of mistake or accident. Although knowledge on the part of a
> defendant cannot be established merely by demonstrating that the
> defendant was negligent, careless, or foolish, knowledge can be
> inferred if the defendant deliberately blinded himself to the existence
> of a fact. Knowledge can be inferred if the defendant was aware of a
> high probability of the existence of the object of the
> conspiracy/scheme to defraud.

Because McMahan objected to the instruction, this court reviews its propriety de

novo. *United States v. Espinoza*, 244 F.3d 1234, 1241 (10th Cir. 2001).

The district court instructed the jury to "consider the instructions as a

whole" and not "single out one instruction alone as stating the law." The jury

instructions included a thorough definition of reasonable doubt, which stated

"[t]he Government must prove each essential element of the offenses charged in

the Indictment beyond a reasonable doubt." Next, when listing the elements of

conspiracy and violations of the Travel Act, the instructions reiterated it was

-11-

necessary for the jury to "be convinced that the government has proved each of the [elements] beyond a reasonable doubt." Considering the instructions as a whole, and their repeated references to the reasonable doubt standard, this court does not harbor any doubt, and certainly not a "substantial doubt that the jury was fairly guided." *United States v. Wolny*, 133 F.3d 758, 765 (10th Cir. 1993).

McMahan next contends it was inappropriate to give the deliberate ignorance instruction in this case. In this circuit, "[t]he use of a deliberate ignorance instruction is appropriate only when evidence has been presented showing the defendant purposely contrived to avoid learning the truth." *United States v. Hilliard*, 31 F.3d 1509, 1514 (10th Cir. 1994) (quotation omitted). In the present case, it was appropriate for the district court to give the deliberate ignorance instruction because the government presented direct evidence of McMahan's willful ignorance.[3]

Despite this evidence, McMahan argues the instruction was improper, resting his argument entirely on a line of cases from the Second Circuit rejecting the use of deliberate ignorance instructions in conspiracy prosecutions. *United States v. Scotti*, 47 F.3d 1237, 1242 (2d Cir. 1995) ("[I]t is logically impossible for

_____

[3]FBI Special Agent Gary Graff testified that McMahan said in an interview that he did not know where his wife got $5000 cash to purchase signs for his campaign. Agent Graff testified McMahan "said he didn't ask [his wife] about the cash because [he] didn't want to know. He said that he had suspected that it might have come from Steve Phipps, but, again, he didn't ask because he didn't want to know."

-12-

a defendant to intend and agree to join a conspiracy if he does not know that it exists."); *see also United States v. Ciambrone*, 787 F.2d 799, 810 (2d Cir. 1986) ("Conscious avoidance of participating in a conspiracy and agreeing to be a member of a conspiracy are mutually exclusive concepts."); *United States v. Mankani*, 738 F.2d 538, 546-47 (2d Cir. 1984) (concluding an agreement to conspire cannot be proved through deliberate ignorance).[4] Even under the Second's Circuit's rule, however, a deliberate ignorance instruction is proper when "knowledge of the fraudulent goals of a conspiracy" is at issue, as opposed to "knowing and intentional participation in the conspiracy." *United States v. Fletcher*, 928 F.2d 495, 502 (2d Cir. 1991).

The instruction and the evidence in this case presented the jury with the former, rather than the latter, scenario. The instruction stated "knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact. Knowledge can be inferred if the defendant was aware of a high probability of the

---

[4]The Second Circuit's approach has not been adopted by any other circuit, and has been explicitly rejected by several others. *See, e.g.*, *United States v. Wert-Ruiz*, 228 F.3d 250, 255 n.3 (3d Cir. 2000) (rejecting *Scotti* and reaffirming the propriety of giving a deliberate ignorance instruction when "the jury had ample evidence with which to conclude that, at a minimum, [the defendant] had willfully blinded himself to the fact that a criminal conspiracy existed" (quotation omitted)); *United States v. Brandon*, 17 F.3d 409, 453 n.75 (1st Cir. 1994) (agreeing with the Seventh Circuit that "a willful blindness instruction can be permissible with respect to a conspiracy charge"); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) (holding "contrary to the precedent in the Second Circuit, that [a deliberate ignorance] instruction is permissible with respect to a conspiracy charge" (citation omitted)).

existence of the object of the conspiracy/scheme to defraud." Although the instruction on the elements of conspiracy required the jury find both that "the Defendants knew the essential objective of the conspiracy" and that "the Defendants knowingly and voluntarily participated [in the conspiracy]," there is no evidence indicating McMahan deliberately blinded himself to his participation in the conspiracy. Rather, the evidence indicated McMahan deliberately blinded himself to the object of the conspiracy—the generation of illegal campaign contributions. Thus, the instruction was proper even under the Second Circuit's approach.

### B. Merger of Conspiracy and Travel Act Offenses

McMahan contends his convictions of both the Travel Act and the conspiracy offense resulted in constitutionally impermissible dual punishment, because those charges merge under Wharton's Rule.[5] McMahan concedes he did not raise this issue below. Accordingly, this court reviews for plain error.

Under Wharton's Rule, "an agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission."

---

[5]"Wharton's Rule owes its name to Francis Wharton, whose treatise on criminal law identified the doctrine and its fundamental rationale." *Iannelli v. United States*, 420 U.S. 770, 773 (1975). McMahan is mistaken in framing this challenge as a double jeopardy claim. *Id.* at 782 ("[T]he broadly formulated Wharton's Rule does not rest on principles of double jeopardy.").

-14-

*Iannelli v. United States*, 420 U.S. 770, 781-82 (1975) (quotation omitted).  While Wharton's Rule is a "judicial presumption, to be applied in the absence of legislative intent to the contrary," *id.* at 782, the third-party exception "renders [the rule] inapplicable when the conspiracy involves the cooperation of a greater number of persons than is required for commission of the substantive offense," *id.* at 775; *see also Gebardi v. United States*, 287 U.S. 112, 122 n.6 (1932) (observing that conspiracies are "deemed criminal [when they] contemplated the co-operation of a greater number of parties than were necessary to the commission of the principal offense").

Because the third-party exception to Wharton's Rule applies in this case, this court need not decide whether the rule requires the merger of a Travel Act violation predicated on state-law bribery and conspiracy to commit that same Travel Act violation.  The conspiracy charged here involved a number of persons other than McMahan and Phipps, including McMahan's wife and two unindicted co-conspirators.  As a result, Wharton's Rule is inapplicable.

## C.    Sufficiency of the Evidence

McMahan asserts the evidence was insufficient to prove either a conspiracy to violate the Travel Act or a violation of the Travel Act beyond a reasonable doubt.  In reviewing the sufficiency of the evidence, this court reviews the record de novo to determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found McMahan guilty of the

crime beyond a reasonable doubt. *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000).

### 1. Travel Act

The Travel Act makes it a crime to "travel[] in interstate or foreign commerce or use[] the mail or any facility in interstate or foreign commerce, with intent to . . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." 18 U.S.C. § 1952. The Travel Act's definition of "unlawful activity" includes "bribery . . . in violation of the laws of the State in which committed." *Id.* § 1952(b). An actual violation of state law is not an element of the Travel Act. *United States v. Welch*, 327 F.3d 1081, 1092 (10th Cir. 2003). Rather, "an individual may violate the Travel Act simply by attempting to perform a specified 'unlawful act' so long as that individual has the requisite intent required by the 'unlawful act.'" *Id.*

McMahan argues his Travel Act convictions should be vacated because the government's evidence was insufficient to prove he acted with corrupt intent required under Oklahoma law. Viewed in the light most favorable to the government, the evidence was sufficient to prove McMahan used interstate facilities with the intent to promote bribery in violation of Oklahoma law. The evidence at trial was sufficient for a reasonable jury to find that McMahan accepted money, as well as other in-kind contributions, from Phipps with the intent to allow his official action to be influenced. The jury heard evidence that

-16-

Phipps underwrote a sizeable percentage of McMahan's 2002 campaign, funded several of McMahan's trips, and bestowed a variety of other gifts on the McMahans. Further, the evidence also revealed that in return for Phipps's contributions, McMahan provided several favors to Phipps in his official capacity as state auditor, including delaying a potential competitor's application to open an abstract company; working to defeat legislation aimed at eliminating the abstracting industry; helping Phipps funnel state appropriations to his companies more directly; and filing an action against the entities owned by Phipps and Stipe to help Phipps put pressure on Stipe to liquidate their partnership. This evidence was sufficient for a reasonable jury to find that McMahan accepted bribes from Phipps with the intent to allow his official action to be influenced. Accordingly, there was sufficient evidence to support McMahan's Travel Act convictions.

### 2. Conspiracy

McMahan also argues there was no evidence he expressly or impliedly agreed to or participated in a conspiracy to violate the Travel Act. "To convict a defendant under the general conspiracy statute, 18 U.S.C. § 371, the government must prove the following elements beyond a reasonable doubt: (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." *United States v. Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009) (quotation omitted). An agreement may be express or implied,

-17-

and "may be inferred entirely from circumstantial evidence." *United States v. Whitney*, 229 F.3d 1296, 1301 (10th Cir. 2000). "Relevant circumstantial evidence includes: the joint appearance of defendants at transactions and negotiations in furtherance of the conspiracy; the relationship among codefendants; mutual representations of defendants to third parties; and other evidence suggesting unity of purpose or common design and understanding among conspirators to accomplish the objects of the conspiracy." *Wardell*, 591 F.3d at 1287 (quotations omitted). "The touchstone of the analysis, therefore, is whether the circumstances, acts, and conduct of the parties are of such a character that the minds of reasonable men may conclude therefrom that an unlawful agreement exists." *Id.* (quotation omitted).

The government presented sufficient evidence to allow the jury to reasonably conclude there was an unlawful agreement between Phipps, McMahan, and the other co-conspirators to violate the Travel Act. The trial record contains a plethora of "evidence suggesting unity of purpose or common design and understanding among conspirators to accomplish the objects of the conspiracy." *Wardell*, 591 F.3d at 1287 (quotations omitted). The fact that the evidence showed McMahan's co-conspirators sought to shield McMahan from liability by funneling Phipps's contributions and requests through McMahan's wife and Arbaugh, does not make the jury's determination unreasonable. Rather, that fact, coupled with McMahan's level of expertise as an auditor and his inconsistent statements to the

FBI, supports the reasonableness of the jury's determination that an unlawful agreement existed among the co-conspirators in this case. Viewed in the light most favorable to the government, the evidence was therefore sufficient to support McMahan's conspiracy conviction.

### D. Character Evidence

McMahan further argues the district court erred in refusing to allow him to present specific instances of conduct to prove his character pursuant to Fed. R. Evid. 405(b). A decision to exclude evidence at trial is reviewed for an abuse of discretion. *United States v. Atencio*, 435 F.3d 1222, 1235 (10th Cir. 2006). "A district court by definition abuses its discretion when it makes an error of law." *United States v. Yarbrough*, 527 F.3d 1092, 1101 (10th Cir. 2008) (quotation omitted).

Fed. R. Evid. 404(a)(1) makes admissible "evidence of a pertinent trait of character offered by an accused." This court has recognized that when the issue before the jury is whether the defendant acted with a prohibited state of mind, such character evidence "is not only relevant, but also vitally important." *Yarbrough*, 527 F.3d at 1101; *United States v. Petersen*, 268 F.2d 87, 88 (10th Cir. 1959) (noting the importance of allowing character evidence when a defendant's "sole defense is lack of wilful intent"). Under Rule 405(b), however, a defendant may only present evidence of specific instances of conduct "[i]n cases in which character or a trait of character of a person is an essential element of a charge,

-19-

claim, or defense." Fed. R. Evid. § 405(b); *United States v. Talamante*, 981 F.2d 1153, 1156 (10th Cir. 1992) ("Under Rule 405, a party may present testimony concerning specific instances of conduct only when character is in issue in the strict sense." (quotation omitted)).  Nevertheless, "[w]hen character evidence is used circumstantially to create an inference that a person acted in conformity with his or her character, Rule 405 allows proof of character only by reputation and opinion." *Talamante*, 981 F.2d at 1156; *see also* Fed. R. Evid. 405, advisory committee's note (differentiating between cases "[w]hen character is used circumstantially" and those "in which character is, in the strict sense, in issue and hence deserving of a searching inquiry").  Accordingly, Rule 405(b) forecloses a defendant from introducing evidence of specific instances of conduct to circumstantially prove their character was inconsistent with criminal intent. *United States v. Marrero*, 904 F.2d 251, 259-60 (5th Cir. 1990) (holding a defendant may not use specific instances of conduct circumstantially to prove lack of intent).

During trial, McMahan attempted to elicit testimony from witnesses regarding specific instances when, *inter alia*, he refused to accept a questionable campaign contribution, and did not provide favorable treatment to Phipps.  Each time, the district court correctly determined that although McMahan was entitled to present character evidence, he could not do so by offering evidence of specific instances of his conduct.  *Yarborough* does not stand for the proposition that such

evidence is admissible in every case in which the defendant presents a defense based solely upon his lack of criminal intent. Rather, *Yarborough* addresses only whether character evidence is admissible under Rule 404(a)(1), not whether a defendant may prove character by presenting specific instances of conduct under Rule 405(b). 527 F.3d at 1100-01. Regardless of how central McMahan perceives proving his character to be to his defense, his attempt to employ evidence of specific instances of prior conduct to circumstantially prove his lack of intent to commit state-law bribery is prohibited by Rule 405(b). Furthermore, McMahan's character is not an essential element of either his Travel Act or conspiracy convictions. Finally, McMahan did not employ a defense, such as entrapment,[6] which places character "in issue in the strict sense." *Talamante*, 981 F.2d at 1156 (quotations omitted). Accordingly, the district court did not abuse its discretion in limiting McMahan to reputation and opinion character evidence.

---

[6]Unlike McMahan's defense, which sought to introduce evidence of specific instances of prior conduct to circumstantially disprove his criminal intent, an entrapment defense actually turns on a trait of character: whether a defendant was predisposed to committing a particular crime. *See, e.g.*, *United States v. Franco*, 484 F.3d 347, 352 (6th Cir. 2007) ("Because predisposition is relevant to entrapment, such character evidence was an essential element of [defendant's] defense, and therefore, these specific instances of his conduct were admissible."); *United States v. Mendoza-Prado*, 314 F.3d 1099, 1103 (9th Cir. 2002) (noting "[t]he character of the defendant [asserting entrapment defense] is one of the elements—indeed, it is an essential element—to be considered in determining predisposition").

**E. Sentencing Variance**

Finally, McMahan argues the district court abused its discretion in deciding the factors provided in 18 U.S.C. § 3553(a) weighed against a downward variance. Following *United States v. Booker*, 543 U.S. 220 (2005), this court reviews all sentences for reasonableness under an abuse of discretion standard. *See Rita v. United States*, 551 U.S. 338, 361 (2007); *United States v. Smart*, 518 F.3d 800, 805 (10th Cir. 2008) ("[W]e now review all sentences . . . whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." (quotation omitted)).

On appeal, McMahan asserts the advisory Guidelines range overstated the seriousness of his offense, and the district court abused its discretion by refusing to remedy the disparity between his sentence and those given to co-conspirators Phipps and Arbaugh. As noted by the district court, this court has held "disparate sentences are allowed where the disparity is explicable by the facts on the record." *United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006) (quotation omitted). Further, we have also held a "decision to accept responsibility and assist the government does not create an unwarranted disparity under § 3553(a)(6)." *United States v. Haley*, 529 F.3d 1308, 1312 (10th Cir. 2008). The disparity between McMahan's sentence and those given to Phipps and Arbaugh is readily explicable by the facts: unlike McMahan, Phipps and Arbaugh accepted responsibility for their actions and cooperated with the government's investigation. This

cooperation led to guilty pleas by Mike Mass and Francis Stipe, as well as the convictions of McMahan and his wife.  In light of these differences, McMahan cannot demonstrate that the district court's refusal to grant a downward variance in this case represented an abuse of discretion.

## IV.  Conclusion

For the foregoing reasons, McMahan's convictions and sentence are **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge